874 So.2d 131 (2004)
Karen J. RICHARD, Individually and on Behalf of Her Minor Child, Emily Richard
v.
Michael A. HALL, Screening Systems International, Louisiana Division, Inc., Allstate Insurance Company and Empire Insurance Company.
No. 2003-C-1488.
Supreme Court of Louisiana.
April 23, 2004.
Rehearing Denied June 25, 2004.
*135 W. Arthur Abercrombie, Jr., John S. Tharp, Gerald L. Walter, Jr., Baton Rouge, Taylor, Porter, Brooks & Phillips, for Applicant.
Gary A. Bezet, Carol Galloway, Baton Rouge, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman; David I. Bordelon, Ungarino & Eckert; Donald R. Smith, Baton Rouge, Smith & Brumfeld, for Respondent.
KNOLL, Justice.
This is a wrongful death case that concerns a duck hunter who accidentally shot and killed another duck hunter. We are called upon to address two significant areas of tort law, namely, vicarious liability of an employer and the immunity afforded by Louisiana's Recreational Use Immunity Statutes.[1] Plaintiffs, the widow and child of the deceased, alleged the employer was vicariously liable and/or liable for its own negligence. The district court granted summary judgment in favor of the employer on both theories of tort liability. The majority of the court of appeal affirmed. We granted plaintiffs' application for a writ of certiorari to consider the correctness, vel non, of their decisions.

FACTS AND PROCEDURAL HISTORY
Screening Systems International, Inc., Louisiana Division (SSI)[2], a closely held corporation, entered into a duck hunting lease. SSI paid $10,000 to Loch Leven Plantation for hunting privileges that were to be utilized by three upper level management executives. The three executives authorized to enjoy SSI's duck hunting lease were Mr. Henry Watson, Jr., President, Mr. Michael Hall, Vice-President and General Manager, and Mr. George LeBlanc, Engineering Manager.
On January 2, 2000, Mr. Watson and Mr. Hall went to Loch Leven to hunt ducks. Also on that morning, John Richard was at Loch Leven to hunt as the guest of Todd Cavin; Mr. Cavin also held a duck lease at Loch Leven.[3] According to the customary practice, numbers were randomly drawn to determine the order in which blinds would be chosen by those who had purchased hunting rights. Todd Cavin drew the number "1" which meant he had first selection of a blind to use that day. Mr. Cavin chose a blind that could accommodate two more people than he had in his party; the location consisted of two sunken blinds abutting each other. Mr.
*136 Cavin asked Mr. Watson and Mr. Hall if they wanted to hunt with his party at the better blind. Mr. Watson and Mr. Hall accepted the invitation.
Mr. Watson, Mr. Hall and Mr. Richard occupied one of the blinds, with Mr. Richard seated in the middle. During the hunt, Mr. Hall accidentally and fatally shot Mr. Richard. Mr. Richard's widow, Karen Richard, subsequently filed suit against Michael Hall, SSI, Allstate Insurance Company (Hall's homeowner's insurance provider), and Empire Insurance Company (SSI's general liability insurer). Plaintiffs assert two bases for holding SSI liable: (1) vicarious liability for its employee's tortious conduct; and (2) direct liability for its failure to instruct authorized employees and their guests in the proper and safe use of firearms while hunting pursuant to SSI's duck lease.
Empire Insurance Company and SSI moved for summary judgment seeking to dismiss all of plaintiffs' claims. The district court signed a judgment on May 23, 2001, granting Empire's motion for summary judgment on the issue of vicarious liability. The court denied summary judgment on the negligence claim against SSI. Empire filed another motion for summary judgment in which it moved to dismiss plaintiffs' negligence claim against SSI, on the grounds that Louisiana's Recreational Use Immunity Statutes (RUS) afforded immunity to SSI. The district court granted the motion, holding the RUS barred plaintiffs' claim of negligence by SSI.[4]
Plaintiffs appealed the grant of summary judgments to the court of appeal. A majority of the appellate panel affirmed. Richard v. Hall, 02-0366 (La.App. 1 Cir. 2/14/03), 843 So.2d 433. The majority, relying upon our decision in Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990) (reh'g denied), held the trial judge did not err in granting summary judgment on the basis of the lack of vicarious liability on the part of SSI. The majority additionally found SSI was a lessee that qualified for the immunity afforded by the RUS, even though it was undisputed that Loch Leven was a recreational enterprise for profit. In dissent, Judge Pettigrew found duck hunting was a business activity of SSI thus precluding the application of the RUS. Judge Pettigrew found at a minimum there were material issues of fact in dispute as to whether it was a business activity and therefore summary judgment was improper. Additionally, he was of the *137 opinion that the duck lease was not a lease at all, but a personal servitude of right of use, which would exclude the application of the RUS. We granted writs to address three issues: (1) whether plaintiffs had produced factual support sufficient to establish they would be able to satisfy their evidentiary burden of proof at trial that Mr. Hall's conduct was within the course and scope of his employment for purposes of vicarious liability; (2) whether SSI's "duck lease" was a lease or a personal servitude of right of use; and (3) whether the immunity afforded by the RUS applies where the owner[5] claiming the immunity is not using the premises principally for a commercial recreational enterprise for profit. Richard v. Hall, 03-1488 (La.10/3/03), 855 So.2d 291.

DISCUSSION
Summary Judgment
We will first address the initial summary judgment dismissing plaintiffs' claim against SSI on grounds of vicarious liability. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Goins v. Wal-Mart Stores, Inc., 01-1136, p. 5 (La.11/28/01), 800 So.2d 783, 788. Summary judgment shall be rendered if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. La.Code Civ. Pro. art. 966(B); Goins, at p. 6, 800 So.2d at 788. The movants, here SSI and Empire, have the burden of proof. La.Code Civ. Pro. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, its burden on the motion does not require it to negate all essential elements of the adverse party's action, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. La.Code Civ. Pro. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to establish they will be able to satisfy their evidentiary burden of proof at trial, there is no genuine issue of material fact. La.Code Civ. Pro. art. 966(C)(2). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Dickerson v. Piccadilly Restaurants, Inc., 99-2633, p. 3-4 (La.App. 1 Cir. 12/22/00), 785 So.2d 842, 844; Solomon v. Taylor Brokerage Services, Inc., 33,832, p. 4 (La.App. 2 Cir. 10/4/00), 768 So.2d 799, 801; Harvey v. Francis, XXXX-XXXX, p. 5 (La.App. 4 Cir. 3/21/01), 785 So.2d 893, 897.
Vicarious Liability
The premise of vicarious liability is codified in La. Civ.Code art. 2320, which provides an employer is liable for the tortious acts of its "servants and overseers in the exercise of the functions in which they are employed." Vicarious liability rests in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities. Ermert, 559 So.2d at 476, citing Ira S. Bushey & Sons v. United States, 398 F.2d 167, 171 (2d Cir.1968); 2 M. Plainol & G. Ripert, Traité Élémentaire de Droit Civil No. 911 (La.St.L.Inst.Trans.1959); Douglas, Vicarious Liability and the Administration of Risk I, 38 Yale L.J. 584, 586 (1929). In determining whether a particular accident may be associated with the *138 employer's business enterprise, the court must essentially decide whether the particular accident is a part of the more or less inevitable toll of a lawful enterprise. Ermert, 559 So.2d at 476, citing 5 F. Harper, F. James & O. Gray, The Law of Torts, § 26.7, at 28 (2d ed.1986). When considering which risks the employer must bear under vicarious liability, the proper test bears resemblance to that which limits liability for workers' compensation, because the employer should be held to anticipate and allow for risks to the public that "arise out of and in the course of his employment of labor. Ermert, 559 So.2d at 476, citations omitted. While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. Russell v. Noullet, 98-0816, p. 4 (La.12/1/98), 721 So.2d 868, 871(reh'g denied 1/15/99). The inquiry requires the trier of fact to determine whether the employee's tortious conduct was so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared to conduct motivated by purely personal considerations entirely extraneous to the employer's interests. Id.
In Ermert, we addressed the determination of the scope of executive employment in a negligence case. There the plaintiffs alleged vicarious liability on the part of the corporation for the negligent acts of its servant, who was founder, majority stockholder, president and chief executive officer of the closely held corporation. We noted that the word "servant" does not exclusively denote a person rendering manual labor; rather it includes anyone who performs continuous service for another and whose physical movements are subject to the control or right to control of the other as to the manner of performing the service. While the rules for determining liability of the employer for the conduct of both superior servants and the humblest employees are the same, the application of these rules may differ due to the dissimilarity of their duties and responsibilities. Ermert, 559 So.2d at 476, citing Restatement (2d) of Agency § 220 comment (a) (1958). The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. Ermert, 559 So.2d at 477, citations omitted. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. Id. The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks. Id.
The facts in Ermert involved an accidental shooting at a hunting camp. Karl F. Ermert, III, Kenneth Decareaux and others were present at the camp to build duck blinds for the upcoming duck season. Decareaux had picked up his shotgun to shoot a nutria to cook it for dinner. Decareaux, while loading his shotgun as he was walking inside the camphouse, accidentally shot Ermert in the foot. Decareaux was president of and majority stockholder in Nu-Arrow Fence Company. The trial court weighed the evidence and concluded that because Nu-Arrow derived economic benefit from Decareaux's activities at the camp, Nu-Arrow was vicariously liable. The court of appeal reversed, holding that Decareaux was engaged in a recreational pursuit in building the duck blinds. Upon reviewing the record and considering the principles of master-servant liability, we found the trial court's conclusion that Decareaux was within the scope of his employment was not clearly wrong. Ermert, 559 So.2d at 478. He was acting within *139 the scope of his employment because as chief executive and majority stockholder, he had established the practice of using the camp and his relationship with his hunting friends for the purpose of furthering his employer's business interests. Ermert, 559 So.2d at 469. In our ratio decidendi we stated:
While Decareaux used the camp partially for his own personal enjoyment and recreation, the record also indicates that he repeatedly and consistently used it for business purposes. Developing new business was a major part of Decareaux's employment with Nu-Arrow. Decareaux testified that he sold fences to almost every other member of the camp, and that the other members had all referred business to him. He had also taken a number of his preferred customers to the camp for entertainment, and these customers had likewise referred business to Nu-Arrow. Another important aspect of Decareaux's duties was dealing with employees. He testified that he had taken his employees to the camp on several occasions for picnics or entertainment, and he had also hosted his company-sponsored softball team at the camp. Considering this evidence, the finder of fact could reasonably conclude that one of Decareaux's motives for participating in the camp was to provide a place to entertain both customers and employees of Nu-Arrow. Ermert, 559 So.2d at 478.
Because Decareaux had repeatedly and consistently used the hunting camp for business purposes, Nu-Arrow had made the risks associated with waterfowling (which are not normally characteristic of the activities of fence companies) a part of its business. The predominant motive of the servant to benefit himself or a third person does not prevent the act from being within the scope of employment. Ermert, 559 So.2d at 477. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. Id.
Our decision in Ermert reaffirmed and further explained the standards we previously enunciated in LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974), and adapted those standards to the atypical master-servant problem that was before us. Roberts v. Benoit, 605 So.2d 1032, 1041 (La.1991). Under the LeBrane test, the determinative question is whether the employee's tortious conduct "was so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." Id. In a negligence distinguished from an intentional tort case, the court need only determine whether the servant's general activities at the time of the tort were within the scope of employment. Id.
Defendants contend the facts in this case differ vastly from the facts in Ermert. Defendants argued the duck lease at Loch Leven was never used to entertain customers or for any business related purposes. In support of their motions for summary judgment on the issue of vicarious liability, defendants submitted deposition testimony which showed SSI never brought clients or customers to Loch Leven; no one from SSI ever conducted any business at Loch Leven; the only authorized users of SSI's duck lease at Loch Leven were the three executives; the expense was paid to provide a perk to upper management; there were no penalties or any other ramifications with respect to Mr. Hall's employment based upon whether or not he used the duck lease; and the duck lease was used purely for their social purposes.
*140 In opposition to defendants' motion for summary judgment, plaintiffs contend SSI paid the $10,000 cost of the lease and treated this as a business expense, categorized as "business promotion," as testified to by SSI's comptroller in her deposition. Additionally, SSI did not record the duck lease as additional compensation on the IRS W-2 forms for the three executives. Mr. Hall testified in his deposition he believed the lease was officially for SSI's business and entertainment purposes. In a filing entitled "Response to Empire Insurance Company's List of Undisputed Facts" plaintiffs admit that no one ever took clients or customers to the lease, but argue the duck season was only in its third week at the time of the accident. Plaintiffs also admit Mr. Hall was not on the clock or getting paid while duck hunting on the day in question; however, plaintiffs counter this aspect is immaterial because Mr. Hall was not an hourly wage earner but a salaried executive. We find plaintiffs have failed to produce factual support sufficient to establish they can satisfy their evidentiary burden of proof at trial, namely, that in this negligence case, Mr. Hall's general activities at the time of the tort were within the scope of his employment. In Ermert we found vicarious liability because Decareaux had repeatedly and consistently used the camp for business purposes. The evidence supported a finding that the purpose of serving the business actuated him to an appreciable extent. In Ermert there was evidence Decareaux's hunting companions were also Nu Arrow's customers and referrers of business; that he had taken a number of preferred customers to the camp for entertainment; that he had taken Nu Arrow employees to the camp on several occasions; and he had hosted the company-sponsored softball team at the camp.
In the matter sub judice, the only factual support plaintiffs offered to support their allegation that Hall was within the course and scope of his employment at the time of the accident was the testimony of Hall and SSI's controller, that SSI intended the lease to be used for business purposes, and that it was treated as a business expense. Intent to utilize the recreational activity for business purposes and/or to entertain clients cannot transform the servant's activities to fall within the scope of employment. Where there is no evidence that any business related entertaining was ever done at the lease, that the servant had ever generated any business by his use of the lease, or that the servant was required to participate in the recreational activity, we cannot say his recreational activities were within the course and scope of his employment. Unlike the evidence in Ermert, SSI had not established the practice of using the recreational activity for the purpose of furthering its business interests.
In resolving this issue, our focus is on the servant and whether his activity at the time of the accident was within the scope of his employment. The servant must be motivated at least in part to serve the master's business. Despite our diligent research, we have been unable to find any jurisprudence from any jurisdiction in which an executive or servant was found to be in the scope of employment solely by the intent of the business to use the recreational activity for business purposes and/or to entertain clients, where the recreational activity had never been used for a business purpose, and was not being used for such purposes at the time of the incident giving rise to the litigation. A recreational activity cannot fairly be said to be characteristic of the business's activities merely upon the intent of the business to use the recreational activity for business purposes at an unspecified future time.
*141 Particularly relevant is that the servant, here Mr. Hall, for whose actions the plaintiffs are trying to hold the employer vicariously liable, never used the recreational activity for business purposes and was not actuated for purposes of serving the business at the time of the accident. Masters are broadly liable for torts of their servants but not liable for all their torts. Dan B. Dobbs, The Law of Torts, § 334 (2001). When the tort becomes uncharacteristic of the business, liability is not imposed. Id. Clearly, Mr. Hall's general activities at the time of this tragic accident were not within the scope of his employment. We find the appellate court was correct in affirming the trial court's grant of summary judgment on this issue.
Recreational Use Immunity Statutes[6]
Plaintiffs also alleged SSI was negligent for failing to properly supervise and instruct employees in the proper and safe use of firearms while hunting pursuant to SSI's duck lease at Loch Leven, and therefore liable for the death of Mr. Richard. In a second motion for summary judgment, SSI and Empire asserted SSI was entitled to the immunity afforded by Louisiana's Recreational Use Immunity Statutes (RUS). Louisiana's RUS are codified at La.Rev.Stat. 9:2791[7] and 2795[8]. *142
*143 The district court granted summary judgment in favor of the defendants, dismissing plaintiffs' claim of independent negligence of SSI, finding SSI is entitled to immunity under the RUS. Plaintiffs present two assignments of error with respect to the grant of summary judgment on this issue. First, plaintiffs aver the trial court erred as a matter of law in holding SSI was a lessee entitled to the immunity afforded by the RUS; second, the trial court erred in applying immunity under the RUS because the statutes do not permit immunity when the premises are used principally for a commercial recreational enterprise for profit. For the reasons that follow we find SSI is afforded immunity pursuant to the RUS.
Lessee Status
La.Rev.Stat. 9:2791 provides, in relevant part:
An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting ... If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not ... assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted. La.Rev.Stat. 9:2791(A)(emphasis added).
La.Rev.Stat. 9:2795 provides, in relevant part:
As used in this section:
* * *
"Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
* * *
Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed. La.Rev.Stat. 9:2795(A)(2), (B)(1)(a), (b)(emphasis added).
Plaintiffs argue SSI fits into none of the protected classes entitled to immunity, specifically, that SSI's "duck lease" does not make SSI a lessee. Plaintiffs correctly note there are three elements absolutely necessary to the contract of lease, to wit: the thing, the price and the consent. La. Civ.Code art. 2670. Plaintiffs claim SSI cannot establish it leased a certain thing, the first element of Article 2670. They contend the thing leased must be definite and certain. Pelican State Bank v. Webb, 175 So. 855, 856 (La.Ct.App. 2 Cir.1937).[9]
*144 Plaintiffs contend that because SSI did not lease a certain and definite area, the contract was not a lease, but a contract permitting the occupant to use the area jointly with others. Plaintiffs further argue SSI simply purchased the use of a single unspecified duck blind randomly chosen each day before the hunt. Accordingly, plaintiffs assert if the premises are not defined, there is no "thing" and therefore the contract is not one of lease. Plaintiffs contend the "duck lease" was at most, a limited personal servitude of right of use or at the least, a strictly personal obligation for services.
Defendants contend the right which SSI leased (the right to enter the premises for the purpose of duck hunting) constitutes a certain "thing" in satisfaction of La. Civ.Code art. 2673. They point out leases that grant the right to use immovable property for purposes of hunting, fishing, trapping, etc. are common and clearly qualify as a lease pursuant to La. Civ.Code arts. 2670 and 2674. Webb v. Theriot, 97-624 (La.App. 3 Cir. 10/29/97), 704 So.2d 1211(reh'g denied 2/25/98) (decision is significant because the court recognized the existence of a valid lease and sublease for the purpose of hunting on immovable property); Moore v. Cameron Parish School Bd., 563 So.2d 347 (La.App. 3 Cir. 1990)(the court recognized surface lease for hunting, trapping and pasture as a valid lease).
Defendants further stress that personal servitudes of right of use affecting immovable property must be in writing. Langevin v. Howard, 363 So.2d 1209, 1214 (La.Ct.App. 2 Cir.1978) writ denied 366 So.2d 560 (La.1979); Hailey v. Panno, 472 So.2d 97, 99 (La.Ct.App. 5 Cir.1985). The agreement between SSI and Loch Leven was not formalized in a written document, therefore it cannot be considered a right of use.
The trial court found "[t]he thing being leased is the property for use for duck hunting." The majority of the appellate panel agreed SSI leased the use of the duck hunting premises for the term of the duck hunting season at the agreed upon price of $10,000. The appellate panel concluded that the hunters rotation to different hunting blinds does not vitiate SSI's status as a lease holder within the purview of the RUS. Judge Pettigrew dissented; he was of the opinion that the "duck lease" was a right of use.
In order to determine whether a "duck lease" is a lease or a personal servitude of right of use, we have reviewed our Civil Code, jurisprudence and scholarly works to assist us in resolving this question.
The right of ownership, which according to traditional civilian analysis includes the elements of usus, fructus and abusus, may lawfully be dismembered in a variety of ways either by the intention of the owner or by operation of law. Exposé des Motifs, Title III: Personal Servitudes, La. Civ.Code Ann. (West 1980). Book II, Title III, of the Louisiana Civil Code of 1870 deals specifically with three permissible dismemberments of the right of ownership: usufruct, use and habitation. Id. These dismemberments of ownership are real rights of enjoyment which by their nature confer direct and immediate, although *145 limited, authority over a thing belonging to another person. Id. They are distinguished from personal (obligatory) rights of enjoyment, such as those arising from leases, which confer rights against a certain debtor who has assumed the obligation to allow the enjoyment of a thing by his creditor. Id.
Title III of Book II of the Louisiana Civil Code of 1870 was revised, amended, and reenacted by Acts 1976, No. 103, § 1, effective January 1, 1977. The 1976 revision suppressed the personal servitude of "use" as a nominate real right and established the different category of "rights of use." 3 A.N. Yiannopoulos, Louisiana Civil Law TreatisePersonal Servitudes, § 222 (4th ed.2000). Civil Code article 639 defines the right of use as a servitude that "confers in favor of a person a specified use of an estate less than full enjoyment." Limited personal servitudes are real rights that confer on a person limited advantages of use or enjoyment over an immovable belonging to another person. Yiannopoulos, § 223. Like usufruct, they are charges on property in favor of a person rather than an estate; like predial servitudes, they are necessarily charges on an immovable belonging to another owner and are confined to certain advantages of use or enjoyment. Thus they are both "personal" and "limited." Id. In connection with the classification of servitudes as personal or real, the qualification of a servitude as "personal" indicates that the servitude is in favor of a person rather than an estate. Id.
Rights of use are real rights which confer limited advantages of use or enjoyment over an immovable. According to traditional civilian notions, a contract of lease establishes personal rights only. 2 A.N. Yiannopoulos, Louisiana Civil Law TreatiseProperty, § 226 (4th ed.2001). Article 1709 of the Code Civil defines lease as "a contract whereby one of the parties undertakes the obligation to furnish to the other the enjoyment of a thing for a certain period of time, in consideration of a certain price which the latter promises to pay him." Id. The definition has been taken almost verbatim from Pothier, who did not entertain any doubts as to the personal nature of the contract of lease. Id. It has been stated that the contract of lease produces all the effects of personal rights and none of the effects of real rights. Id. Under the civil law concept, a lease does not convey any real right or title to the property leased, but only a personal right. Comment, The Louisiana Law of Lease, 39 Tul.L.Rev. 798 (1964). Louisiana courts have for a long time classified leases as contracts establishing personal rights and obligations. Yiannopoulos, Property, § 226.
The personal servitude of right of use is a real right, whereas lease is a personal right. The classification of rights as personal or real is grounded on the nature of a right. Yiannopoulos, Property, § 146. Both personal and real rights may be either movable or immovable, depending on their object. Id. When the object of a personal right is a corporeal immovable, the personal right is an incorporeal immovable. Id.
The duck lease at issue before us cannot be classified as a right of use. Personal servitudes affecting immovable property which are created by agreement between the parties must be in writing. Langevin, 363 So.2d at 1214, see also Yiannopoulos, Personal Servitudes, § 238. It is undisputed that the duck lease at issue was an oral agreement and was not in writing.
More importantly, the duck lease did not convey any real rights to SSI. The duck lease was not a charge on the property in favor of SSI. It more closely resembles a *146 contract whereby the lessors undertook the obligation to furnish to SSI the enjoyment of duck hunting on Loch Leven for a certain period of time in consideration of the $10,000 which SSI promised to, and did, pay. The three elements of lease are present: the price was $10,000, the consent between the lessors and SSI, and the thing, namely, the right to hunt ducks on Loch Leven, which is an incorporeal. Our Civil Code provides "[c]ertain incorporeal things may also be let out, such as a right of toll and the like; but there are some which can not be the object of hire, such as a credit." La. Civ.Code art. 2679.
We note with approval that the First Circuit Court of Appeal has held an oral agreement whereby an owner for fixed consideration gave another the right to trap on his land is a contract of lease; the object of the lease was the right to trap. Defelice v. Autin, 159 So. 648, 649-50 (La.Ct.App. 1 Cir.1935). The appellate court likened the right to trap to the right of toll, which is mentioned as an illustration in Civ.Code art. 2679. Defelice, 159 So. at 649. There too it was argued that the agreement was a grant of a servitude and not a lease. The Defelice court examined authorities concerning minerals, which showed that in all cases in which there had been a sale or a reservation of mineral rights, the effect produced by the sale or reservation was the creation of a right of servitude. Oil and gas under the land, being fugitive minerals, were the property of no person until reduced to possession after having been abstracted. A reservation of such minerals was not a reservation of the minerals themselves, as one could not reserve something one did not own. The reservation resulted merely in a right to go on the land for the purpose of exploring it for minerals, which right created a servitude. On the other hand, the contract was invariably treated as a lease in those cases in which the agreement consisted of a grant by the owner of the land to another party of the right to explore for minerals on a given rental or on a royalty basis. The court found the trapping lease was an example of the latter type, and that the trapping agreement resulted in a contract of lease, not a servitude.
We find the right to hunt is analogous to the right to trap. See Defelice. In the present case, the granting of hunting rights on Loch Leven to SSI, for a fixed consideration, is a lease of an incorporeal thing. The thing leased is the incorporeal right to hunt on the land of another. Therefore, SSI's status is that of a lessee within the purview of the RUS.
Commercial Enterprise
We now turn to plaintiffs' final averment, that SSI is not afforded the immunity of the RUS because the owner/lessor of Loch Leven was operating the premises as a commercial recreational enterprise for profit. Plaintiffs contend La. Rev. Stats. 9:2791 and 9:2795 restrict the availability of immunity to accidents that occur on rural[10] land or water not used for commercial purposes. Plaintiffs assert SSI, as the lessee of a commercial enterprise, cannot take advantage of landowner immunity under La. Rev. Stats. 9:2791 and 2795. Louisiana Revised Statute 9:2791(B) provides: "... the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section." Because Loch Leven was a commercial enterprise for profit, plaintiffs *147 contend SSI cannot avail itself of the immunity afforded by the RUS even if SSI did not utilize the premises as a commercial recreational enterprise for profit.
In addition, La.Rev.Stat. 9:2795(B) states:
(1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purpose.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.
Louisiana Revised Statute 9:2795 specifically excepts an "owner of commercial recreational developments or facilities" from immunity under the statute. "Owner" is defined to include tenants and lessees. La.Rev.Stat. 9:2795(A)(2). Because SSI was the lessee of a commercial recreational enterprise, plaintiffs contend it was not entitled to the immunity afforded under La. Rev.Stat. 9:2795.
Defendants respond that the proper focus is upon SSI's use of the property. Because SSI did not utilize the premises for a commercial profit, it is not precluded from the immunity afforded under the RUS.
This dispute concerns a matter of law. Do the statutes immunize lessees of land that is used principally for a commercial recreational enterprise for profit by the owners, where the lessees do not utilize the premises for commercial purposes but for recreation?[11]
The appellate court stated the pivotal issue was whether SSI should be precluded from ascription to the protective veil of the RUS because the owner/lessor of Loch Leven was operating the premises for a commercial, recreational enterprise. It noted the facts in this case present a unique relationship in that SSI, and not the owner/lessor of Loch Leven, was the party that "[gave] permission to another to enter the premises for ... recreational purposes...." La.Rev.Stat. 9:2791(A). That court found because SSI's provision of hunting privileges to selected employees was recreational in character, its use of the premises was not "principally for a commercial, recreational enterprise for profit...." La.Rev.Stat. 9:2791(B). The appellate majority reasoned the language of La.Rev.Stat. 9:2791 prohibits applicability of the RUS when one party offers another party the use of the premises principally for commercial motives. Richard v. Hall, at p. 8, 843 So.2d at 438. Accordingly, it concluded because SSI's grant of permission to the three executives did not utilize the premises for commercial profit, SSI qualified for the immunity afforded by the RUS.
Our review of the RUS finds the appellate majority reached the correct result but its reasoning is flawed. Louisiana's RUS consists of two statutes. In separate years, the Legislature passed two remarkably similar statutes designed to encourage landowners to open their lands, on a basically nonprofit basis for recreational use. Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law, § 11.5 *148 (1996). The statutes should be construed with reference to each other. Id.
The starting point for the interpretation of any statute is the language of the statute itself. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 12 (La.6/29/01), 808 So.2d 294, 302; Cat's Meow, Inc. v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. See La. Civ.Code art. 9; La.Rev.Stat. 1:4. The Recreational Use Statutes are laws on the same subject matter and must be interpreted in reference to each other. See La. Civ.Code art. 13; Monteville v. Terrebonne Parish Consol. Gov't, 567 So.2d 1097, 1100 (La.1990)(reh'g denied 1990). The Recreational Use Statutes are in derogation of common or natural right and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning. Monteville, 567 So.2d at 1100.
The court of appeal's conclusion that SSI qualified for immunity because its use of the premises was not principally for commercial profit is not supported by the language of La. Rev.Stat. 9:2791(B). The pertinent language provides "the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit [.]" Nothing in La.Rev.Stat. 9:2791 indicates that it is the determination of who is profiting from the operation and/or use of the premises that governs the scope of the immunity. The statute clearly states La. Rev.Stat. 9:2791 does not apply when the premises are used principally for a commercial recreational enterprise for profit. See Landry v. Board of Comm'rs of Orleans Levee Dis't, 477 So.2d 672, 674 (La.1985)("[Rev.Stat. 9:2791] does not apply when the premises are used principally for a commercial, recreational enterprise for profit"). It was undisputed that the owner/lessor of Loch Leven was operating the premises as a commercial recreational enterprise. Because the premises were used principally for a commercial, recreational enterprise for profit, the provisions of La. Rev.Stat. 9:2791 cannot apply, even to SSI whose use of the premises was not for commercial profit.
However, review of La. Rev.Stat. 9:2791 does not end our analysis. Because La. Rev.Stat. 9:2791 and 2795 relate to the same subject matter and should be read in pari materia, Keelen v. State, Dep't of Culture, Recreation and Tourism, 463 So.2d 1287, 1289 (La.1985), we must examine La. Rev.Stat. 9:2795 and determine if SSI is afforded immunity under its provisions.
Revised Statute 9:2795B(1) clearly supports an interpretation that an owner, lessee or occupant qualifies for the immunity where his use of the premises is not principally for a commercial, recreational enterprise for profit. That statute provides "an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined ..." has immunity as specified in the statute.
Contrary to La. Rev.Stat. 9:2791, which denies the immunity provided in that section "when the premises are used principally for a commercial, recreational enterprise for profit," we find SSI qualifies for the immunity afforded pursuant to La. Rev.Stat. 9:2795 because it did not utilize Loch Leven Plantation for commercial profit. An owner of land, which by statutory definition includes a lessee, qualifies for the immunity afforded by La. Rev.Stat. 9:2795; the only exception is "an owner of *149 commercial recreational developments or facilities." La.Rev.Stat. 9:2795B(1). Pursuant to the wording of La. Rev.Stat. 9:2795, it is evident the owner/lessor of Loch Leven does not qualify for the immunity because it offers the use of the premises principally for commercial motives; simultaneously a lessee, such as SSI, does qualify for the immunity because it does not use the premises principally for commercial motives.
Because La. Rev.Stat. 9:2791 and 2795 are read in pari materia, an ambiguity results when attempting to apply the statutes to the facts of this particular case. SSI is afforded immunity for the acts of persons it permits on to the land,[12] except that no immunity applies when the premises are used principally for a commercial recreational enterprise for profit, regardless of whether SSI utilized the premises for profit. See La.Rev.Stat. 9:2791. On the other hand, pursuant to La. Rev.Stat. 9:2795, SSI is afforded the immunities the RUS provide if SSI does not use the premises for profit, even should it lease the premises from a lessor who does utilize the premises primarily for profit from recreational purposes.
When a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; SWAT 24, XXXX-XXXX at 11, 808 So.2d at 302. The meaning and intent of a law are determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. SWAT 24, XXXX-XXXX at 11, 808 So.2d at 302; Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1129. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. SWAT 24, XXXX-XXXX at 11-808 So.2d at 302; Boyter, 99-0761 at 9, 756 So.2d at 1129. This is because the rules of statutory construction require that the general intent and fair purpose of the legislature in enacting the law must, if possible, be given effect. Boyter, 99-0761 at 9, 756 So.2d at 1129. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. SWAT 24, XXXX-XXXX at 12, 808 So.2d at 302; Langlois v. East Baton Rouge Parish Sch. Bd., 99-2007, p. 5 (La.5/16/00), 761 So.2d 504, 507. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." SWAT 24, XXXX-XXXX at 12, 808 So.2d at 302 (quoting Smith v. Flournoy, 238 La. 432, 115 So.2d 809, 814 (1959)). It is presumed the intention of the legislative branch is to achieve a consistent body of law. Boyter, 99-0761 at 10, 756 So.2d at 1129; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766.
The historical background of recreational use statutes begins in 1953, when conservation groups and persons interested in recreational activities on rural lands convinced the Michigan Legislature to adopt a recreational use statute. Terrence Centner, Tort Liability for Sports and Recreational *150 Activities: Expanding Statutory Immunity for Protected Classes and Activities, 26 J. Legis. 1, 12 (2000). In 1965, a model recreational use statute was drafted that generally was used in the adoption of statutes in those states lacking such legislation.[13]Id. Today, every state has a recreational use statute governing enumerated activities. Id.
The statement of purpose of La. Rev.Stat. 9:2795 is contained in 1975 La. Acts, No. 615, § 1 and provides:
The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
In enacting § 2795, the Legislature adopted, essentially without change, the model act presented by the Council of State Governments through its annual publication, Suggested State Legislation. Monteville, 567 So.2d at 1101; Kenneth M. Murchison, Local Government Law, 47 La. L.Rev. 305, 324 (1986-7) (The origin is apparent because of the close correlation between the wording of the statute and the suggested legislation, particularly the use of common law terms to define "owner."). The purpose of the model act was explained in its accompanying commentary:
Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreation resources available. Where the owners of private land suitable for recreational use make it available on a business basis, there may be little reason to treat such owners and the facilities they provide in any way different from that customary for operators of private enterprises. However, in those instances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.
Suggested State Legislation, at 150.
There is nothing to indicate that the Legislature had a different purpose in adopting § 2791. Monteville, 567 So.2d at 1102.
Acts 1975, No. 615, § 7 provides "[a]ll laws are[14] [sic] parts of laws in conflict herewith are hereby repealed." Therefore the conflict between the language contained in § 2791 and the provisions of § 2795 must necessarily be resolved by finding that the provisions of § 2795 control in deciding whether SSI is entitled to claim the immunity afforded by Louisiana's RUS in the situation before us. The language in § 2791, which provides that the RUS shall not apply "when the premises are used principally for a commercial, recreational enterprise for profit" conflicts with the language in § 2795, which provides the immunity is afforded to the owner, "except an owner of commercial recreational developments or facilities[.]" Because Acts 1975, No. 615, § 7 specifically provides all parts of laws in conflict with La. Rev. 9:2795 are repealed, the controlling provision in determining who is afforded immunity when the premises are a commercial recreational enterprise is the language of § 2795.
The Legislature is presumed to have enacted a statute in light of the *151 preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law. New Orleans Rosenbush Claims Serv. Inc. v. City of New Orleans, 94-2223, p. 11 (La.4/10/95), 653 So.2d 538, 544 (reh'g denied 5/11/95). A statute's meaning and intent is determined after consideration of the entire statute and all other statutes on the same subject matter, and a construction should be placed on the provisions in question which is consistent with the express terms of the statutes and with the obvious intent of the Legislature in its enactment of the statutes. ABL Mgmt., Inc. v. Bd. of Supervisors of Southern Univ., XXXX-XXXX, p. 6 (La. 11/28/00), 773 So.2d 131, 135. Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions. Id. A construction of law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the statute and will carry out the Legislature's intention. Id. Inasmuch as La.Rev.Stat. 9:2795 was the later expression of legislative will and has been amended six times, we conclude the Legislature has impliedly expressed an intention that § 2795 be controlling as between these two statutes. See Peterson v. Western World Ins. Co., 536 So.2d 639, 643 (La.Ct.App. 1 Cir.1988) writ denied, 541 So.2d 858 (La.1989). If the statutes differ, as they do here, the later enacted one, La.Rev.Stat. 9:2795, controls.
The enactment of La.Rev.Stat. 9:2795, a second more expansive immunity statute, evidences an intent on the Legislature's part that these statutes are to grant a broad immunity from liability. The amendments to the statutes indicate the Legislature's will to expand the immunity.[15] Our resolution of the conflicting language is in accordance with our duty to strictly interpret these statutes because they constitute an impairment to the common or natural right, and we do not extend them beyond their obvious meaning. Section 2791's proscription of immunity where the premises are used principally for a commercial recreational enterprise for profit has been repealed by Acts 1975, No. 615, § 7, which provides the immunity to owners, except owners of commercial recreational developments. Giving effect to the general intent and fair purpose of the legislature in enacting La.Rev.Stat. 9:2795, and particularly the language it used in crafting this exception to the immunity, supports our interpretation that where a lessee does not utilize the land for a commercial recreational purpose, irrespective of the owner/lessor's use of the land for commercial recreational purposes, said lessee is entitled to the immunity afforded by the RUS.

*152 CONCLUSION
In conclusion, we find in order for a plaintiff to meet its burden of proof that an employee was in the course and scope of his employment for purposes of vicarious liability, plaintiff may not rely upon evidence that the employer intended the recreational activity to be used for business purposes at some future date. Nor is it sufficient evidence that the business treated the expense as a business expense. The focus is on the servant and whether he was motivated, at least in part, to serve the master's business. Plaintiffs here produced no evidence to show that Mr. Hall's tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to SSI's business. The uncontradicted evidence showed the duck lease had never been used to entertain clients, or that any business related activities ever took place at the duck lease. Plaintiffs have failed to produce factual support sufficient to establish they can satisfy their evidentiary burden of proof at trial.
We further find pursuant to La. Civ.Code art. 2679, a "duck lease" can be classified as a lease; it is the lease of an incorporeal. The "thing" leased is the personal right to hunt ducks on the lessor's property.
Finally, we hold that pursuant to Louisiana's Recreational Use Immunity Statutes, it is the "owner's" use of the premises and not the underlying classification of the premises as a commercial recreational enterprise for profit that determines the availability of the immunity provisions to a qualified owner. A lessee is included within the statutory definition of owner for purposes of the RUS. When, as here, the owner/lessor operates the premises as a commercial recreational enterprise, but the lessee does not utilize the premises for a commercial profit from recreational activities, the lessee is entitled to the immunities afforded by the RUS. In its enactment of La.Rev.Stat. 9:2795, the Legislature specifically repealed the language in La.Rev.Stat. 9:2791 which conflicted with the later enacted statute. Placing a construction on La.Rev.Stat. 9:2795B(1) which is consistent with the obvious intent of the Legislature results in a resolution that the person claiming the immunity must utilize the premises for a commercial recreational enterprise for profit to be excluded from the immunity provisions.

DECREE
For the foregoing reasons, the judgments of the district court and the appellate court are affirmed.
AFFIRMED.
VICTORY J., concurs in the result.
NOTES
[1] La.Rev.Stat. 9:2791 and 9:2795.
[2] SSI is engaged in the business of manufacturing and selling traveling water screens.
[3] Mr. Richard was also an employee of SSI. However, it was merely coincidental that he was hunting at Loch Leven that same day as Mr. Watson and Mr. Hall. There are no allegations by the plaintiffs that Mr. Richard's hunting trip was work related in any manner. In addition to Mr. Richard, Mr Cavin had three other guests join him that day.
[4] The district court actually rendered three judgments. On May 23, 2001, the court signed a judgment granting in part and denying in part Empire's motion for summary judgment. The court granted summary judgment dismissing plaintiffs' claim of vicarious liability on the part of SSI, Empire's insured. This judgment was not a final judgment and could be revised at any time prior to the rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties. La.Code Civ. Pro. art. 1915(B)(2); 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law TreatiseCivil Procedure, § 12.1 (1999). At the time the judgment was signed, SSI's motion for summary judgment was pending before the court on this very issue. On September 10, 2001, the court heard argument on Empire's second motion for summary judgment, along with SSI's motion, concerning the issue of SSI's independent negligence. The court signed a second judgment on September 12, 2001, granting SSI's motion for summary judgment on the remaining negligence claim, dismissing all claims asserted against SSI. A Stipulated Amended Judgment was signed on September 21, 2001; this judgment noted that the parties agreed that the May 14, 2001 ruling should extend to SSI and be a part of the stipulated amended judgment. This third judgment vacated the September 12, 2001 judgment, and ordered that the motions for summary judgment filed by SSI and Empire be granted as to plaintiffs' remaining claim of independent negligence of SSI and further ordered that all claims against SSI and Empire be dismissed with prejudice.
[5] We use the term "owner" here to include not only the landowner, but also a tenant, lessee, occupant or person in control of the premises, as defined in the RUS.
[6] Loch Leven Plantation is located in Mississippi; plaintiffs stipulated that Louisiana law applied to an immunity defense.
[7] § 2791. Liability of owner or occupant of property not used primarily for commercial recreational purposes

A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing, or boating or to give warning of any hazardous conditions, use of, structure, or activities on such premises to persons entering for such purposes, whether the hazardous condition or instrumentality causing the harm is one normally encountered in the true outdoors or one created by the placement of structures or conduct of commercial activities on the premises. If such an owner, lessee, or occupant gives permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
D. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
[8] At the time of the accident, La.Rev.Stat. 9:2795 provided:

§ 2795. Limitation of liability of landowner of property used for recreational purposes; property owned by the Department of Wildlife and Fisheries; parks owned by public entities
A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. (1) The limitation of liability provided in this Section shall apply to any lands or water bottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or water bottoms are used, and whether they are used for recreational or nonrecreational purposes.
(2)(a) The limitation of liability provided in this Section shall apply to any lands owned, leased, or managed as a public park by the state or any of its political subdivisions and which is used for recreational purposes.
(b) For purposes of the limitation of liability afforded to parks pursuant hereto, "land" does not include buildings, structures, machinery, or equipment regardless of whether attached to the realty.
(c) For purposes of the limitation of liability afforded to parks pursuant to this Section, this limitation does not apply to playground equipment which is defective.
(d) The limitation of liability as extended to parks in this Section shall not apply to intentional or grossly negligent acts by an employee of the public entity.
F. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
La.Rev.Stat. 9:2795 was amended by Acts 2001, No. 1199, which in par. (A)(1), inserted "urban or rural" preceding "lands, roads, water," and substituted "or" for "and" following "private ways"; in par. (A)(3), inserted "or nonmotorized" preceding "vehicle operation" and inserted "roller skating, roller blading, skate boarding," preceding "sledding" and substituted "or" for "and" following "sports"; in subpar. (E)(2)(a), inserted "whether urban or rural, which are" preceding "owned, leased or managed"; substituted "are" for "is" preceding "used for recreational purposes"; and rewrote subpar. (E)(2)(b) to read:
The provision of supervision on any land managed as a public park by the state or any of its political subdivisions does not create any greater duty of care which may exist and does not create a duty of care or basis of liability for personal injury or for damage to personal property caused by the act or omission of any person responsible for security or supervision of park activities, except as provided in Subparagraph (E)(2)(d) of this Section.
In subpar. (E)(2)(c), "or stands" was inserted following "playground equipment" and "are" was substituted for "is" preceding "defective."
These substantive changes of La.Rev.Stat. 9:2795 are not relevant to the issues before us.
[9] Pelican State Bank, addressed whether movables owned by intervener were subject to plaintiff/lessor's privilege and right of pledge asserted against defendant, the lessee. Intervener had placed a game machine, cigarette machine and a victrola in the building leased by Webb from Pelican State Bank. The proceeds from the machines were split evenly between intervener and Webb. Pelican State Bank argued the arrangement between intervener and Webb was not a lease, and the movables were subject to the lessor's privilege for the rent due on the building. Intervener contended that the contract between Webb and him was one of sublease and that all amounts due as rent having been paid, his property may not be held for rent due by the principal lessee. The court held that because there was no definite area, space, or place set apart for the occupancy of the machines, one of the essential elements of lease was lacking. When Webb's consent was procured to allow the machines to be operated in the building, nothing was said about leasing any part of the building for the purpose. The privilege of putting the machines in and keeping them in the building was definite, but not so as to where they would be located. The court found the contract was a commutative one between Webb and intervener, not a contract of lease.
[10] Prior to its amendment in 2001, La.Rev.Stat. 9:2795 did not specifically include urban land. The amendment which inserted "urban or rural" preceding "land, roads, water" in paragraph (A)(1) does not have any effect on our decision here.
[11] For purposes of our decision we accept that the owner/lessor of Loch Leven was the owner of a commercial recreational development.
[12] A qualified owner does not "assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted." La.Rev.Stat. 9:2791(A).
[13] See 24 Suggested State Legislation, Public Recreation of Private Lands: Limitations on Liability, 150-52 (1965).
[14] Obviously, the Legislature intended this word to be "or."
[15] Acts 1986, No. 967, § 1 added par. B(2) to La.Rev.Stat. 9:2795, which provides immunity to commercial owners where the injury occurs on land that does not comprise the commercial facility and over which the owner has no control when the activity commences, occurs or terminates on the commercial facility. Acts 1989, No. 534, § 1 added subsection D to La.Rev.Stat. 9:2791 and subsection F to La.Rev.Stat. 9:2795, which provide the immunity extended by the RUS shall not be affected by the granting of a lease, right of use or right of occupancy or by posting the premises, which may limit the use of the premises to persons other than the entire public. Acts 1996, 1st Ex. Session, No. 75, § 1 amended La.Rev.Stat. 9:2795 to extend the immunity to lands which are owned, leased or managed as a public park by the state or any of its political subdivisions. Acts 2001, No. 1199, § 1 amended La.Rev.Stat. 9:2795 to extend the immunity to urban as well as rural lands.