# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1494

**TRINITY UNIVERSAL INSURANCE COMPANY**

**VERSUS**

**DARRYL JAMES LYONS, SR., ET AL.**

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2001-3646,
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

************

**MICHAEL G. SULLIVAN
JUDGE**

************

Court composed of Michael G. Sullivan, Glenn B. Gremillion, and J. David Painter, Judges.

**REVERSED AND REMANDED.**

**Kirk L. Landry**
**Brian Hightower**
**Keogh, Cox & Wilson, Ltd.**
**Post Office Box 1151**
**Baton Rouge, Louisiana 70821**
**(225) 383-3796**
**Counsel for Plaintiff/Appellant:**
    **Trinity Universal Insurance Company**

**James L. Pate**
**Angela Barbera-Odinet**
**Laborde & Neuner**
**Post Office Drawer 52828**
**Lafayette, LA 70505-2828**
**(337) 237-7000**
**Counsel for Defendant/Appellee:**
    **City of Westlake**

**Stephen A. Berniard, Jr.**
**Raggio, Cappel, Chozen & Berniard**
**Post Office Box 820**
**Lake Charles, Louisiana  70601**
**(337) 436-9481**
**Counsel for Defendant/Appellee:**
    **Darryl James Lyons, Sr.**
    **Darryl James Lyons, Jr.**
    **Mrs. Darryl James Lyons, Sr.**

**Maurice L. Tynes**
**Attorney at Law**
**4839 Ihles Road**
**Lake Charles, Louisiana  70605**
**(337) 479-1173**
**Counsel for Defendant/Appellee:**
    **Allstate Insurance Company**

SULLIVAN, Judge.

In the early morning hours of July 26, 2000, James Lyons, Jr., a junior volunteer firefighter with the City of Westlake Fire Department, set fire to a building owned and occupied by American Legion Post #370 (the American Legion) in Westlake. Trinity Insurance Company (Trinity), the American Legion's insurer, filed suit against James, his parents, and the City of Westlake to recoup the funds it paid the American Legion for damages caused by the fire. The City of Westlake filed a motion for summary judgment in which it asserted that Trinity could not establish liability against it for James' arson. The trial court granted the motion. Trinity appeals. For the following reasons, we reverse and remand for further proceedings.

### *Facts*

In 1999, the Westlake Fire Department instituted a program for junior volunteer firefighters. These young volunteers received essentially the same training that adult volunteer firefighters received. Beginning in early March 2000, James started three fires in Westlake, the last being the fire at the American Legion. During that same time, he stole payroll checks and gas cards from the Westlake Fire Department. The record indicates that James had been a volunteer for approximately fifteen months when he set the fire at the American Legion.

James' identity as the arsonist came to light when Jarrod Roy, his friend and co-volunteer, related his suspicions that James set the fire at the American Legion to the police during its investigation of the fire. Jarrod had related his suspicions to the assistant fire chief before the fire. The police questioned James, and he confessed that he started it. He also confessed to starting the other two fires.

## Summary Judgment

It is well settled that appellate courts review summary judgments *de novo*, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but rather he must point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. *Id*.

## Discussion

Trinity asserts that there are three bases of liability for the City of Westlake: 1) the City had a duty to conduct psychological testing on junior volunteer firefighters; 2) the City had a duty to act on Jarrod's suspicions when he related them to the assistant fire chief; and 3) the City was vicariously liable for James' arson under La.Civ.Code art. 2320. The trial court rejected the first and third bases as

2

grounds for liability on the part of the City and determined that the City did not have sufficient time to act on the Jarrod's suspicions before the fire.

*Psychological Testing*

Trinity argues that the City's failure to require psychological testing of volunteers is a factual determination not properly decided by summary judgment. It does not cite any authority for this proposition. In *Smith v. Lafayette Parish Sheriff's Department*, 03-517 (La.App. 3 Cir. 4/21/04), 874 So.2d 863, *writ denied*, 04-1886 (La. 10/29/04), 885 So.2d 595, the court rejected the same argument with respect to a sheriff's failure to have employee applicants psychologically tested and concluded that the failure to do so was not a basis for liability for damages suffered by a victim raped by one of his deputies.[1]

In *Smith*, the court observed:

> Sheriff Breaux established a hiring/retention policy when he took office which was within the course and scope of his lawful powers and duties. LPSD followed the policy when Mr. Comeaux applied to retain his position with LPSD. No statutes, regulations, or other legal requirements directed the hiring of law enforcement employees. Therefore, Sheriff Breaux's hiring/retention policy was a discretionary act, and liability cannot be imposed on LPSD for its application of the policy.

*Id.* at 868.

---

[1] In *Smith*, the decision not to administer psychological testing was found to be a discretionary act of the sheriff under La.R.S. 9:2798.1 and liability could not be imposed on the LPSD for his failure to require such testing. La.R.S. 9:2798.1(B) provides in pertinent part:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

3

Trinity has not presented any evidence of a statute, regulation, or requirement which requires a fire department to institute specific policies, guidelines, or testing requirements for hiring employees or volunteers. Furthermore, Trinity has not presented any evidence that the City violated any of its own hiring policies or guidelines when it accepted James into its junior volunteer program. We find no error with the trial court's rejection of this claim.

Trinity also argues that because the City instituted psychological testing for its employees and volunteers after this fire, it should be found liable for failing to test James. Louisiana Code of Evidence Article 407 provides in part: "In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." This argument is without merit.

### *Vicarious Liability*

Trinity next argues that the City is liable pursuant to La.Civ.Code art. 2320 which provides in part: "Teachers . . . are answerable for the damage caused by their scholars or apprentices, while under their superintendence." It contends that the trial court improperly focused only on the employer/employee relationship in its determination that the City is not responsible for James' actions under this provision.

Trinity urges that James utilized "specialized knowledge" he acquired through his participation in the junior volunteer program which allowed him to determine an "ignition point" of the American Legion building and destroy it. Continuing, it points to the third paragraph of Article 2320, which provides in part: "responsibility only attaches, when . . . teachers . . . might have prevented the act which caused the

4

damage, and have not done it," renders the City liable. We do not agree. James was not under the "superintendence" of the fire department at the time he set the fire at the American Legion. The City provided the information to its employees and volunteers with the intention that it be used to assist in fighting fires, not setting them. While James may have utilized information he learned in the volunteer program to set the fire at the American Legion, Article 2320, under facts of this case, does not provide a basis for holding the City liable for James' actions.

With regard to the employer/employee relationship, Trinity argues that the relationship between the fire department and the volunteer firefighters was equivalent to a master/servant relationship and that the City, as employer, is vicariously liable for James' actions. In *Richard v. Hall,* 03-1488 (La. 4/23/04), 874 So.2d 131, an employee was engaged in a recreational activity which the plaintiffs urged was for business purposes (hunting on a lease paid for by the employer) when he committed a tort which injured the plaintiff. We find the situation in *Richard* analogous to the one at hand because James was on his own time and was not performing any volunteer duties at the time he set the fire. In determining whether the employee's actions were within the scope of his employment, the supreme court held: "our focus is on the servant and whether his activity at the time of the accident was within the scope of his employment. The servant must be motivated at least in part to serve the master's business." *Id.* at 140. Neither of these factors is even arguably present here. Accordingly, we find no error with the trial court's rejection of these contentions of liability.

5

*Knowledge*

Trinity asserts that the City had information James would set a fire the night of the American Legion fire and that it was negligent in failing to act on that information. It argued to the trial court that Jarrod related his suspicions to Mr. Picou, the assistant fire chief, the evening of July 25, 2000, and that, if the City had acted on that information, the fire at the American Legion could have been prevented. The trial court rejected the argument.

In his written statement dated July 27, 2000, Jarrod explained how he became suspicious that James was setting fires:

> James always told me that he would see me at the fire tonight. James told me this as a joke. *Recently when James would tell me that there would be a fire tonight, there really was a fire. I started getting suspicious and when James would tell me this I would tell Asst. Fire Chief Jaques Picou. . . .* James said that he was going to go. As James was walking out of the door James told me that he would see me in the morning. When I got off of work I went to the Westlake Fire Department and told Jaques Picou what James told me at Popeyes.

(Emphasis added.)

According to Jarrod's statement, he did not relate his suspicion that James was going to set a fire July 25, 2000 to Mr. Picou until after he got off work which was after 9:15 p.m. The fire occurred at approximately midnight. If this was all that Jarrod had stated, we would find no error with the trial court's conclusion that this short period of time was insufficient for the City to have acted on his suspicions. It was not.

Jarrod also stated that he had related his suspicions to Mr. Picou more than once and before the evening of July 25, 2000. If in fact he did, the City may have had time to conduct an investigation to determine whether his suspicions were correct. There is not enough information in the record to make this determination. Therefore,

6

the City has not established that there are no genuine issues of material fact regarding its knowledge of Jarrod's suspicions and whether it could have investigated those suspicions and prevented the fire at the American Legion. Accordingly, the judgment of the trial court which granted the City's motion for summary judgment is reversed. The motion is denied, and the case is remanded for further proceedings to determine whether Jarrod's previous suspicions coupled with the information on July 25, 2000 warranted investigation by the City of Westlake before the American Legion fire was set.

### *Disposition*

The trial court's grant of summary judgment in favor of the City of Westlake is reversed, and the case is remanded for further proceedings in accordance with this opinion. All costs are assessed to the City of Westlake.

**REVERSED AND REMANDED.**