# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-441


**CURTIS PRICE, ET AL.**

**VERSUS**

**TENNECO OIL COMPANY, ET AL.**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 78,339
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

************

**MICHAEL G. SULLIVAN
JUDGE**

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Billy Howard Ezell, Judges.


**AFFIRMED.**

**Berney L. Strauss**
**Rhett E. King**
**Strauss & King, APLC**
**406 Magazine Street, Suite 300**
**New Orleans, Louisiana 70130**
**(504) 523-0033**
**Counsel for Plaintiffs/Appellants:**
    **Curtis Price**
    **April Price**
    **Jimmy Monceaux**
    **David Shaffer**

**R. K. Christovich**
**Kevin R. Tully**
**Gregory S. LaCour**
**H. Carter Marshall**
**Christovich & Kearney, LLP**
**601 Poydras Street, Suite 2300**
**New Orleans, Louisiana  70130**
**(504) 561-5700**
**Counsel for Defendant/Appellee:**
> **Union Oil Company of California**

**James D. "Buddy" Caldwell**
**Attorney General**
**Elizabeth B. Hollins**
**Assistant Attorney General**
**Louisiana Department of Justice**
**Division of Risk Litigation**
**One Lakeshore Drive, Suite 1200**
**Lake Charles, Louisiana  70629**
**(337) 491-2880**
**Counsel for Defendants/Appellees:**
> **State of Louisiana, Department of Natural Resources**
> **State of Louisiana, Mineral Resources Office**
> **State of Louisiana, Office of Conservation**

**SULLIVAN, Judge.**

Plaintiffs sued numerous defendants to recover damages they suffered when the trawler in which they were traveling allided with an unlighted, unmarked well structure. The trial court granted summary judgment in favor of two defendants, dismissing them from this litigation. Plaintiffs appeal. We affirm.

### Facts and Procedural History

On the night of July 21, 2001, an allision occurred between the M/V *Papillon*, a wooden-hulled trawler, and an unlighted, unmarked well structure in White Lake in Vermilion Parish.[1] The vessel sank and was a total loss. The vessel owner, Jimmy Monceaux, and his two passengers, Curtis Price and David Shaffer, suffered damages and filed suit to recover.[2]

The water bottom on which the well structure is situated is owned by the State of Louisiana (the State). The well, assigned serial number 198181 by the State, and its adjacent structure was constructed by Tenneco Oil Company (Tenneco) in 1985 within state lease 11713, pursuant to a permit granted by the State on January 25, 1985. Tenneco assigned the lease, and its assignee later assigned the lease to another party. State lease 11713 terminated in 1994 due to lack of production.

On August 17, 1995, well 198181, which had been plugged and abandoned in 1992, was deemed "orphaned" by the Louisiana Office of Conservation. Two weeks later on August 31, 1995, the State executed state lease 15038, which included the

---

[1] In *Giorgio v. Alliance Operating Corp.*, 921 So.2d 58, 62 n.1, the supreme court set forth two definitions for "allision": "'An allision is a collision between a moving vessel and a stationary object.' Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 14-2, 89, n. 1 (4th ed.2004). 'Allision. The running of one vessel into or against another, as distinguished from a collision, *i.e.*, the running of two vessels against each other. But this distinction is not very carefully observed.' *Black's Law Dictionary*, 75 (6th ed.1990)."

[2] Mr. Price's wife also sought damages for loss of consortium.

1

land encompassing well number 198181, in favor of Pride Oil and Gas Properties, Inc. Pride Oil and Gas Properties, Inc. assigned the lease to Unocal Oil Company of California (Unocal) on November 8, 1995. On November 21, 2001, Unocal filed a partial release of a parcel situated within lease 15038 which encompassed the well.

Federal regulations require that "obstruction lights and privately maintained maritime aids to navigation" be installed on "artificial islands," such as the well structure with which Plaintiffs' vessel allided. 33 C.F.R. 67.01-1, -5. Tenneco installed obstruction lights on the well structure on May 1, 1986.

In their suit, Plaintiffs allege that the State, as owner of the lake bottom, Tenneco,[3] and all lessees thereafter, including Unocal, are liable for their damages under general maritime and state law.

In 2004, the State and Unocal filed motions for summary judgment, which the trial court denied. In January 2006, the Louisiana Supreme Court issued its opinion in *Giorgio v. Alliance Operating Corp.*, 05-02 (La. 1/19/06), 921 So.2d 58, a factually-similar case, where the State was found not to be the owner or custodian of an unlighted well structure with which the plaintiffs' vessel allided. The supreme court held that "in the absence of either ownership or custody of the [well] structure . . . the State had no duty to light the [well] structure"; therefore, the State was not liable to the plaintiffs under theories of negligence or strict liability. *Id*. at 62.

Following *Giorgio*, the State and Unocal refiled their motions for summary judgment, which the trial court granted. Plaintiffs appeal, assigning five errors with the trial court's judgment.

---

[3]Tenneco Oil Company has been served and is in the process of filing an answer.

2

## Assignments of Error

Plaintiffs' five assigned errors are:

1. *Giorgio* is not legally dispositive of the issue of whether the State owes a duty to the general public operating vessels in State waters.

2. Contested issues of fact exist which preclude summary judgment.

3. As mover of summary judgment, the State bears the burden of proving that there is an absence of factual support for an essential element of the plaintiffs' claims. The State did not address the issue of garde or custody of the structure but merely relied upon *Giorgio* as to the issue of ownership. The trial court erred in not applying the appropriate standard for granting summary judgment on the Plaintiffs' 2317 claims.

4. *Giorgio* is not legally dispositive of the issue of whether Unocal owes a duty to the general public operating [a] vessel in an area under lease to Unocal, nor is *Giorgio*, dispositive of the issue of whether a lessee, like Unocal, may have liability for its custody or garde under La.Civ.Code art. 2317. The trial court erred in ruling that *Giorgio* was dispositive of the issue of the Unocal's garde or custody of the structure, from which liability would attach to the State under La.Civ.Code art. 2317.

5. Contested issues of fact exist in this matter which preclude summary judgment on Plaintiffs' claims against Unocal under La.Civ.Code art. 2317. The trial court erred in granting summary judgment despite the existence of contested issues of fact relating to Plaintiffs' Article 2317 claims against Unocal. Alternatively, the trial court erred in granting summary judgment despite the existence of contested issues of combined law and fact relating to Plaintiffs' Article 2317 claims against Unocal.

## Standard of Review

Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342

3

(La.1991). The mover is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The initial burden of proof is on the mover to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). "A 'fact' is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Penalber v. Blount*, 550 So.2d 577, 583 (La.1989).

Neither the State nor Unocal will bear the burden of proof at trial. Therefore, it is not necessary that they negate all essential elements of Plaintiffs' action. They need only point out to the court that there is an absence of factual support for one or more elements essential to Plaintiffs' claims. La.Code Civ.P. art. 966(C)(2); *see also Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131. Consequently, if the State and Unocal meet their initial burdens of proof, the burden then shifts to Plaintiffs to present sufficient factual support to establish that they will be able to satisfy their evidentiary burden at trial. *Id.* If they fail to meet this burden, there is no genuine issue of material fact, and the State and Unocal are entitled to summary judgment as a matter of law. *Id.*

### *Discussion*

### *Liability of the State*

*Giorgio*, 921 So.2d 58, involved liability claims arising out of a situation which was almost identical to the one presented here. The plaintiffs were injured when their vessel allided with a well structure that had been declared "orphaned" by the State. The supreme court first considered who had the obligation to install and maintain

lights mandated by federal law [4] on the well structure and determined that the owner

of the well structure had that responsibility. *Id.* The supreme court then determined

that, under La.Civ.Code art. 493,[5] the State was not the owner of the well structure.

Plaintiffs do not dispute that applying this holding to the facts here results in

the conclusion that the State is not liable as owner of the well structure under federal

or state law[6] for their injuries. Rather, they contend that the State is liable to them

under La.Civ.Code art 2317. Louisiana Civil Code Article 2317 provides in part:

"We are responsible, not only for the damage occasioned by our own act, but for that

which is caused by . . . the things which we have in our custody." Under Article

2317, a nonowner who has care, custody, or garde of the thing which caused injury

is liable for the damage. *Giorgio*, 921 So.2d 58 (citing *Loescher v. Parr*, 324 So.2d

---

[4]33 C.F.R. § 67.40-15 provides:
The District Commander may mark, for the protection of marine commerce, any
structure whenever the owner thereof has failed suitably to mark the same in
accordance with this part, and the owner shall reimburse the Coast Guard for all costs
incurred.

[5]Louisiana Civil Code Article 493 provides in part:

Buildings, other constructions permanently attached to the ground, and
plantings made on the land of another with his consent belong to him who made
them. They belong to the owner of the ground when they are made without his
consent.

When the owner of buildings, other constructions permanently attached to the
ground, or plantings no longer has the right to keep them on the land of another, he
may remove them subject to his obligation to restore the property to its former
condition. If he does not remove them within ninety days after written demand, the
owner of the land may, after the ninetieth day from the date of mailing the written
demand, appropriate ownership of the improvements by providing an additional
written notice by certified mail, and upon receipt of the certified mail by the owner
of the improvements, the owner of the land obtains ownership of the improvements
and owes nothing to the owner of the improvements. Until such time as the owner
of the land appropriates the improvements, the improvements shall remain the
property of he who made them and he shall be solely responsible for any harm caused
by the improvements.

[6]The supreme court determined in *Giorgio*, 921 So.2d at 73 (citing *Green v. Indus.
Helicopters, Inc.*, 593 So.2d 634 (La.1992))*,* that "application of state law [to the plaintiffs' claims]
would not impermissibly interfere with any required uniformity of general maritime law."

5

441 (La.1975)). "[W]hether the law imposes a duty of garde upon a party is a factual inquiry based upon the determination of (1) what benefit the party received from the thing, and (2) what kind of direction and control the party had over it." *Id*. at 73.

Plaintiffs contend that the State has garde of the well structure. Pointing out that a determination of custody is a factual inquiry, they assert that there are genuine issues of material of fact concerning whether the State had garde of the well structure which remain unanswered, rendering the trial court's grant of summary judgment improper. However, they do not identify these claimed issues of fact. Accordingly, we find no merit with this contention.

Plaintiffs also contend that this case parallels the case of *Dupree v. City of New Orleans*, 99-3651 (La. 8/31/00), 765 So.2d 1002, in which the supreme court held that the New Orleans Sewerage and Water Board had garde of a city street on which an individual was injured when his vehicle struck a hole in a city street. They claim that the facts here so closely parallel the pertinent facts present in *Dupree* that they establish the State had garde of the well structure.

In *Dupree*, the Sewerage and Water Board maintained water and sewer lines beneath city streets and investigated reports of holes in streets to determine if they were caused by a leak before referring the complaint to the street department. The supreme court concluded that the Sewerage and Water Board had custody of the street where the plaintiff's accident occurred because employees of the board had been to the hole a number of times during the six weeks between the time it was reported and the plaintiff's accident to inspect or test the lines below the hole or place barricades around the hole and the Sewerage and Water Board reported that the hole needed to

6

be repaired to the street department only after it determined that the hole did not result from a leak in any of the lines for which it was responsible.

Plaintiffs claim that the following "facts" are essentially the same as the facts present in *Dupree* and that they establish the State had garde of the well structure: 1) it owns the lake bottom; 2) it has leased the area where the well is situated for decades; 3) it permitted a prior lessee to erect the well structure; 4) it benefitted from royalties resulting from production by the well structure; 5) it benefitted from lease payments made after the accident; 6) it was aware or should have been aware of the dangerous condition of the well structure because of a site inspection performed by a State employee; 7) no corrective action was taken to correct a dangerous condition despite potential harm to its citizens.

Contrary to Plaintiffs' arguments, the facts of this case do not parallel the facts in *Dupree*. There is no evidence that the State laid or maintains any lines or pipes on or around the well or its structure as in *Dupree*, and the only time a representative went to the well structure was to inspect it and declare it "orphaned." The well in *Giorgio* was also "orphaned," and the supreme court found that the State's act of declaring the well "orphaned" was a regulatory act which did not result in the State becoming owner of the site or becoming responsible for lighting the structure surrounding the well, explaining:

> [T]he State is not liable when the State merely engages in regulatory activity because regulatory acts and even ownership do not necessarily give custody and garde to the State, especially in these circumstances where ownership of the structure still rests with the permittee. To find otherwise in this case would not further the social utility of our strict liability principles, nor would it be feasible to hold the State liable merely through the exercise of its regulatory function. Direction and control must be established on a case by case basis, determined upon facts demonstrating actual acts of direction and control other than regulation.

7

*Giorgio*, 921 So.2d at 78.

The supreme court also determined in *Giorgio* that the first four facts itemized by Plaintiffs did not result in the State having custody of the well structure, and Plaintiffs do not explain how the existence of these four facts in this case warrants a conclusion different from the supreme court's conclusion in *Giorgio*. Therefore, we conclude that the existence of these facts does not establish that the State has garde of the well structure.

Plaintiffs claim that the State benefitted from lease payments made by Unocal after their accident. The State collected a penalty of $29,700 from Unocal to the State in 2002 for its failure to timely file a partial release of lease 15038, which expired by its own terms as to some, but not all of the leased acreage, in the fall of 2000 due to lack of production when another portion of the leased acreage was included in a unitization agreement. The State contended that the lease expired by its own terms as to the acreage on which the well structure is situated on August 14, 2000, while Unocal took the position that it expired November 7, 2000. Plaintiffs have not produced any evidence which suggests that state lease 15038 expired as to the leased acreage at issue later than November 7, 2000. Accordingly, we conclude that the well structure was not covered by state lease 15038 when their accident occurred on July 21, 2001, and that the State's pursuit and settlement of the penalty after Plaintiffs' accident was a penalty and not a lease payment.

Plaintiffs' last two "facts" are contentions, not facts, as they are not established by the evidence. There is no evidence as to when the navigation aid lights became nonfunctional or that this information can be established at all. To suggest that the State knew or should have known the well structure posed danger to its citizens

8

because of a site inspection performed by a State employee in 1995 or that corrective action should have been taken to correct a dangerous condition which posed potential harm to Louisiana citizens without this information is speculation. Furthermore, evidence on these issues would not be evidence of custody but of liability *if* the State was found to have custody or garde of the well structure.

The State observed in its brief that, even if the evidence established it had custody of the well structure when their accident occurred, Plaintiffs have not met their burden of proof because they have not established the second prong of custody, benefit. The supreme court addressed this issue in *Giorgio*, 921 So.2d at 78 (citation omitted):

> [C]ontrol and direction are not enough to establish custody, care, or garde and to rebut the presumption of garde arising from ownership or the understanding that guardianship of a thing from which liability arises rests with the owner until such time as it is transferred to another. To establish garde, the record must show what benefit the State received from the abandoned platform.
>
> One can assume that no party would debate the fact the State did derive a benefit from the platform during its productive years. On the other hand, the State during those years did not exercise any direction or control over the platform other than its authorized regulatory functions and the benefit to the lessee in those years most likely far outweighed the benefit derived by the State. Moreover, although the Louisiana Oilfield Site Restoration Law [La.R.S. 30:80-97] does acknowledge a benefit to the State to clean up, close, and restore oilfield sites, the record is devoid of evidence demonstrating any benefit received by the State from the abandoned platform at issue. Rather, the record shows the platform served as a hazard and obstruction to navigation. [The State's representative] explained that "orphaned" denotes a site that has no further use. The record is clear that at the time of the accident, the State exercised no direction or control over the structure and derived no benefit from the structure.
>
> Therefore, at the time the allision occurred, the State did not have custody or garde of the platform as the State neither owned, nor controlled or benefitted from the abandoned platform. . . . Accordingly, the State owed no duty to the plaintiffs to protect against the harm they

suffered, and in the absence of such duty, we find the lower courts erred in finding the State liable.

Plaintiffs argue that *Giorgio* is not legally dispositive of whether the State owes a duty to the general public operating vessels in Louisiana waters but do not address this argument separate from their complaints that genuine issues of material fact exist which preclude summary judgment in favor of the State. All but two of the seven facts which they claim create genuine issues of material fact have been established by the evidence and determined either by the supreme court or this court not to result in the State having garde or custody of the well structure. The last two are not facts, and, even if they were, they are not evidence of garde or custody. Plaintiffs have failed to establish that they will be able to prove at trial that the State had garde or custody of well 198181, i.e., was in control of and benefitted from the well, as contemplated by the supreme court's decision in *Giorgio*. Accordingly, summary judgment is appropriate here.

### Liability of Unocal

Plaintiffs assign the same errors with regard to the trial court's grant of summary judgment in favor of Unocal as they did to summary judgment in favor of the State. Their only argument in support of their assigned errors is that Unocal, as a lessee, was in a different position from the State. Plaintiffs correctly assert that a lessee may be in better position to know a hazard exists and to eliminate it. *King v. Louviere*, 543 So.2d 1327 (La.1989). However, as discussed above, Unocal was not lessee of the acreage on which the well structure is situated when their accident occurred, as its lease on that acreage had expired in 2000. Besides, as discussed above, there is no evidence regarding when the obstruction lights on the well structure failed to function, and Plaintiffs have not shown that they could meet the

10

burden of proof established by La.Civ.Code art. 2317. Accordingly, Unocal is entitled to summary judgment.

## *Disposition*

The judgment of the trial court is affirmed. All costs are assessed to Plaintiffs.

**AFFIRMED.**