PETTIGREW J.
| gPlaintiff appeals the trial court’s judgment granting summary judgment in favor of defendants and denying her motion to strike affidavits. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Stella Michelle Fournerat, filed a wrongful death action against defendants, Edward J. Gay Planting and Manufacturing, Ltd. (“FJG Planting”), St. Louis Planting, Inc. (“St. Louis Planting”), Farm Bureau Insurance Company (“Farm Bureau”), and Louisiana Farm Bureau Casualty Insurance Company[1] (“Louisiana Farm Bureau”) (sometimes collectively referred to hereinafter as “defendants”), after the death of her forty-five year-old son, Wendell Fournerat, who lived with her at her home in Plaquemine, Louisiana.[2] In an original and two supplemental and amending petitions, Ms. Fournerat alleged that: 1) Wendell died as a result of injuries he sustained in an accident while he operated a three wheeler on property in Plaquemine, Louisiana, owned by EJG Planting and leased as an “agricultural tenant” by St. Louis Planting, where he encountered a concealed and unprotected excavation, which was dug to accommodate a drain pipe that led underground to a drainage ditch or canal; 2) EJG Planting and St. Louis Planting knew or should have known that the property was frequently traversed by individuals; 3) a cause of the accident was EJG Planting and St. Louis Planting’s negligence in failing to cover the drainage pipe, or cordoning off, or posting signs to indicate the location of the excavation; 4) Wendell was treated at River West Medical Center, but Dr. Smith and the staff of River West failed to identify and treat the internal injuries that Wendell suffered in the accident; 5) a cause of Wendell’s death was Dr. Smith and the River West staffs |s“medically negligent care;”[3] 6) Wendell suffered great pain and agony before his death and was conscious of the fact that he was dying; 7) she has incurred medical and funeral expenses and will suffer grief, mental anguish, and financial loss; and 8) Louisiana Farm Bureau provided a policy of liability insurance.[4] Ms. Fournerat *78 prayed for a money judgment against defendants, jointly and in solido.
EJG Planting and Louisiana Farm Bureau answered the original petition, praying for judgment in their favor and against Ms. Fournerat that would deny her claims with prejudice and dismiss her claims at her cost. St. Louis Planting and Louisiana Farm Bureau answered the original and first amending and supplemental petition, admitting there was a policy of insurance in force that named St. Louis Planting as the insured and seeking the dismissal of plaintiffs suit at her cost. St. Louis Planting, Louisiana Farm Bureau Mutual Insurance Company, and Southern Farm Bureau Casualty Insurance Company answered Ms. Fournerat’s second amending and supplementing petition for damages, generally denying the allegations contained therein. In that answer, St. Louis Planting and its insurers also alleged that “St. Louis Planting [was] immune from liability for the damages allegedly suffered arising out of the accident at issue, in accordance with the Recreational Use Immunity Statutes, [La. R.S.] 9:2791 and 9:2795.”[5] (Emphasis in original.)
On May 18, 2010, St. Louis Planting, Louisiana Farm Bureau Mutual Insurance Company, and Southern Farm Bureau Casualty Insurance Company filed a motion for |4summary judgment, seeking the dismissal of Ms. Fournerat’s claims against these particular defendants with prejudice.[6] These movers asserted that the motion “should be decided on the Recreational Use Immunity Statutes (‘RUS’) outlined in [La. R.S.] 9:2791 and 9:2795” and that the activity of the deceased was “within the ‘recreational’ requirement of the RUS.” Alternatively, movers asserted the drain at issue was not a “hidden” condition, but rather was “open and obvious” and not a defective condition. Various affidavits and depositions were filed into the record in support of the motion, and the motion for summary judgment was set for hearing.
On May 25, 2010, EJG Planting and Louisiana Farm Bureau also filed a motion for summary judgment, urging “the plaintiff seeks to hold [FJG Planting] liable for an accident which occurred while the decedent was engaged in recreational activity on ... property that is clearly covered by the Recreational Use Statutes.... Therefore, a question of whether [EJG Planting] is immune under the RUS is an issue that is susceptible of summary judgment.” Pursuant to this motion, counsel prayed that judgment would be granted in their favor “as a matter of law.” In the supporting memorandum, counsel urged that Ms. Fournerat’s claims against EJG Planting must be dismissed.
Ms. Fournerat filed: 1) a motion to strike two of the affidavits that movers had filed in support of the motion, and 2) an opposition memorandum that asserted, among other arguments, the land in question is not rural, the land is not exclusively used for recreational purposes by non-employees of defendants, and the drainage structure is not open and obvious.
FJG Planting and Louisiana Farm Bureau filed a reply brief to Ms. Fournerat’s *79 opposition to the motion for summary judgment, wherein movers argued, “The RUS Statutes, as Amended in 2001, Do Not Require that the Property be Rural.” (Emphasis in original.) Movers asserted, “By Acts 2001, No. 1199[,] the legislature inserted ‘urban or rural’ preceding ‘land, roads, water’ in [the definition of ‘Land’ as set forth in La. R.S. 9:2795]. The legislature plainly intended to clarify and expand the | ¿application of the RUS.” Movers asserted the land was being used by Wendell for a statutorily-defined recreational purpose as defined in La. R.S. 9:2795(A)(3). Furthermore, movers argued that the drainage structure was “clearly covered by the RUS.”
St. Louis Planting filed its reply memorandum in support of its motion, urging, “Defendants assert that this motion for summary judgment should be decided on the Recreational Use Immunity Statutes (‘RUS’) set out in [La. R.S.] 9:2791 and 9:2795. Plaintiff agrees but has relied upon the RUS as interpreted prior to the statutory amendment in 2001.”
Following a November 10, 2010 hearing on the motions, the trial court signed a December 9, 2010 judgment, which ordered, in pertinent part, as follows:
The Court considering the resolution of the motions for summary judgment to be purely a matter of law:
IT IS ORDERED that Defendants’ motions for summary [judgment] are granted, the Court finding the RUS is applicable to the land in question and that the 2001 amendment to [La. R.S. 9:2795] which added the word urban renders the question whether the land is rural and/or undeveloped moot. The court hereby adopts argument of defense counsel as its reasons for judgment.
IT IS FURTHER ORDERED that Plaintiffs’ [sic] motion to strike is denied.
Ms. Fournerat sought a timely appeal from this judgment. On September 21, 2011, this court issued a Rule to Show Cause Order why the appeal should not be dismissed because the December 9, 2010 judgment appeared to be a partial judgment. In accordance with this court’s order, the trial court signed a new judgment on February 8, 2012, granting judgment in favor of defendants and against Ms. Four-nerat, dismissing her claims against defendants at her costs. In a March 19, 2012 order, this court maintained Ms. Fourner-at’s appeal.
On appeal, Ms. Fournerat assigns the following specifications of error for our review:
1. The [trial] court was in error in finding [La. R.S.] 9:2795 applicable to the land in question and disregarding the inquiry into whether the land is rural, undeveloped and nonresidential;
R2. The trial court failed to strike the affidavit of Richard Bengtson despite the fact that it lacks scientific support and his investigation was inadequate. John Gay is . neither a surveyor nor an engineer and cannot offer the opinion he does.
LAW AND ANALYSIS

Standard of Review and General Principles of Summary Judgment

Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 2009-1202, p. 5 (La.App. 1 Cir. 2/12/10), 35 So.3d 334, 339-340, unit denied, 2010-0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is ex *80 pressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La.Code Civ. P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769 (per curiam). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Janney v. Pearce, 2009-2103, p. 5 (La.App. 1 Cir. 5/7/10), 40 So.3d 285, 288-289, writ denied, 2010-1356 (La.9/24/10), 45 So.3d 1078.
|7In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines, 2004-0806 at 1, 876 So.2d at 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050 (per curiam).

Applicability of the RUS

The first issue on appeal is whether the RUS are applicable, thereby immunizing defendants from liability. Ms. Fournerat argues the trial court erred when it applied La. R.S. 9:2795 to property that is not used primarily for recreation and is not rural, undeveloped, and non-residential. She further asserts that there is no evidence in the record regarding what use Wendell was making of the property at the time of the accident. Thus, according to Ms. Fournerat, defendants are not entitled to the immunity provided by the RUS.
Limitation of liability is statutorily afforded to owners and operators of property used for recreational purposes pursuant to La. R.S. 9:2791 and 9:2795. At the outset we note that the statutes relate to the same subject matter and are to be read together. Keelen v. State, Dept. of Culture, Recreation and Tourism, 463 So.2d 1287, 1289 (La.1985). Louisiana Revised Statutes 9:2791 and 9:2795 were originally enacted as Act 248 of 1964 and Act 615 of 1975, respectively. Both acts intended to provide a limitation of tortious liability of landowners who allowed their property to be used for recreational purposes. Except for some stylistic differences, minor changes in phraseology, and enactment eleven years apart, both acts essentially accomplish the same purpose. In separate years, the Legislature passed these two remarkably similar statutes designed to encourage landowners to open *81 their lands, on a basically nonprofit basis for recreational use. Richard v. Hall, 2003-1488, pp. 21-22 (La.4/23/04), 874 So.2d 131, 147.
lRThe RUS are in derogation of common or natural right and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning. Monteville v. Terrbonne Parish Consol. Government, 567 So.2d 1097, 1100 (La.1990). However, the enactment of La. R.S. 9:2795, a second more expansive immunity statute, evidences an intent on the Legislature’s part that these statutes are to grant a broad immunity from liability. Richard, 2003-1488 at 28, 874 So.2d at 151. The statement of purpose of La. R.S. 9:2795 is contained in 1975 La. Acts, No. 615, § 1 and provides: “The purpose of this Act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.” Richard, 2003-1488 at 26, 874 So.2d at 150. Furthermore, 1975 La. Acts, No. 615, § 7 provides that all laws or parts of laws in conflict with La. R.S. 9:2795 are repealed. Inasmuch as La. R.S. 9:2795, as enacted by Act 615 of 1975, was the later expression of legislative will and has been amended six times, we conclude that the legislature has impliedly expressed an intention that La. R.S. 9:2795 be controlling as between these two statutes. See Peterson v. Western World Ins. Co., 536 So.2d 639, 643 (La.App. 1 Cir.1988), writ denied, 541 So.2d 858 (La.1989). Thus, if there is a conflict between the statutes, the later enacted one, La. R.S. 9:2795, controls. Richard, 2003-1488 at 28, 874 So.2d at 151.
At all times pertinent hereto, La. R.S. 9:2791 provided as follows:
A.An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing, or boating or to give warning of any hazardous conditions, use of, structure, or activities on such premises to persons entering for such purposes, whether the hazardous condition or instrumentality causing the harm is one normally encountered in the true outdoors or one created by the placement of structures or conduct of commercial activities on the premises. If such an owner, lessee, or occupant gives permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or ^property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word “premises” as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
D. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other *82 ■ than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
The later-enacted statute, La. R.S. 9:2795, pertinently provided:
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
Historically, the following three-part jurisprudential test was utilized in determining whether a defendant would be afforded immunity under the RUS. First, the land upon which the injury occurs must be undeveloped, non-residential, and rural or semi-rural. Second, the injury itself must be the result of recreation that can be pursued in the “true outdoors.” Third, the injury-causing instrumentality must be of the type normally encountered in the “true outdoors” and not “of the type usually found in someone’s backyard.” Keelen, 463 So.2d at 1290-1291. However, the legislature effectively removed the first prong of this test in 2001 when it amended La. R.S. 9:2795 | inby adding the phrase “urban or rural” to section (A)(1) and the phrase “whether urban or rural” to section (E)(2)(a). Prior to its amendment in 2001, La. R.S. 9:2795 did not specifically include urban land. Moreover, in 1995, La. R.S. 9:2795(B)(l)(c) was amended to substitute “caused by any defect in the land regardless of whether naturally occurring or man-made” for “incurred by such person.” Thus, the third prong of the test was also removed.
Applying the above legal precepts to this case, and having thoroughly reviewed the evidence in the record, we agree with the trial court’s conclusion that summary judgment in favor of defendants was warranted. The purpose of the property where the subject drain was located was for commercial activity to facilitate St. Louis Planting’s sugarcane farming operations. The record is replete with evidence that prior to this incident, both EJG Planting and St. Louis Planting knew that the general public and neighbors traveled on the headland road at issue and did nothing to stop this recreational use of the property as long as it did not interfere with the sugarcane farming operations. Furthermore, neither EJG Planting nor St. Louis Planting ever requested or received any form of compensation for the recreational use of the property.
It is clear from the record that at the time of the accident, Wendell was within the “recreational” requirement of the RUS. Pursuant to La. R.S. 9:2795(A)(3), *83 activities for “recreational purposes” for which the owner and/or lessee of land are immune include “motorized ... vehicle operation for recreation purposes.” Based on the evidence below, there exists no disputed material fact that Wendell was on the property for anything other than a recreational purpose when the alleged accident occurred.
Given the facts and circumstances herein, the arguments made by Ms. Fournerat on appeal regarding the RUS are without merit. Ms. Fournerat failed to bear her burden of producing evidence that there were genuine issues of material fact remaining as to any of the issues relative to the applicability of the RUS and her claims against defendants. Accordingly, summary judgment was appropriate.
| nMotion to Strike Affidavits
Ms. Fournerat next argues on appeal that the trial court erred in denying her motion to strike the affidavits of Richard Bengtson and John Gay. In the motion to strike, Ms. Fournerat alleged that the affidavits were “not supported by data, a proper investigation, training or experience.” On appeal, Ms. Fournerat adds that the “Bengtson affidavit lacks scientific support and his investigation was inadequate” and that “John Gay is neither a surveyor nor an engineer and cannot offer some of the opinions he does.”
In response, defendants maintain that even if the motion to strike the affidavits should have been granted, the trial court’s action resulted in harmless error as nothing in either affidavit was relied upon by defendants concerning the RUS legal issue. Rather, defendants maintain there was ample evidence presented in the form of deposition testimony that supported their position on the RUS issue without the need for the affidavits.[7] We agree with defendants and find no abuse of discretion in the trial court’s decision denying the motion to strike the affidavits. See In re Succession of Wagner, 2008-0212, p. 7 (La.App. 1 Cir. 8/8/08), 993 So.2d 709, 716 (“Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion.”).
CONCLUSION
For the above and foregoing reasons, we affirm the judgment of the trial court and assess all costs associated with this appeal against plaintiff, Stella Michelle Fournerat.
AFFIRMED.
KUHN, J., concurs & assigns reasons.

. Counsel for Louisiana Farm Bureau answered the original petition indicating it had been erroneously identified in the petition as Farm Bureau Insurance Company.

. Ms. Foumerat’s second amending petition also named River West Medical Center Properties, LLC, d/b/a River West Medical Center ("River West”) and Dr. James Dumon Smith as additional defendants. The claims against Dr. Smith were dismissed with prejudice on a motion for summary judgment filed by Dr. Smith. Judgment was signed accordingly by the trial court on November 10, 2010, and has not been appealed by Ms. Fournerat. As for River West, a "Notice Of Bankruptcy Stay” was filed into the record on March 3, 2009, indicating that on February 6, 2009, an Involuntary Petition of bankruptcy was filed in the United States Bankruptcy Court naming River West as a debtor in bankruptcy.

. One of plaintiff’s amending and supplemental petitions alleged that her claims against Dr. Smith and River West Medical Center had been submitted to a medical review panel and that an opinion had already been issued.

. Ms. Fournerat erroneously named Farm Bureau as a defendant in the original and amending and supplemental petitions.

. In a supplemental and amended answer, St. Louis Planting also alleged, in pertinent part:
St. Louis Planting knew that the general public and adjoining neighbors traveled on the headland roads and specifically the headland at issue for their own recreational purposes. St. Louis Planting did not attempt to prohibit the recreational use of the premises by the general public to the extent that the recreational use by the general public did not interfere with its farming operations.

. The motion collectively referred to these insurers as “Farm Bureau."

. The defendants also point to language in Ms. Fournerat’s appeal brief that impliedly renders moot this very issue. In the conclusion of her brief, Ms. Fournerat, when speaking about the affidavits, noted as follows:
"Not that the court found the affidavits to be scientifically or factual sufficient or probative. In fact, none of the information provided the court proved to be of any consequence."