STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1617

ASHLEY NICHOLE MAJOR BARES AND JAMES WESLEY MAJOR

VERSUS

PROGRESSIVE GULF INSURANCE COMPANY, ET AL

*DATE OF JUDGMENT:*     **AUG 1 0 2022**

ON APPEAL FROM THE EIGHTEENTH JUDICIAL DISTRICT COURT,
PARISH OF WEST BATON ROUGE, STATE OF LOUISIANA
NUMBER 45465, DIVISION C

HONORABLE ALVIN BATISTE, JR., JUDGE

* * * * * *

Ralph L. Fletcher
Ryan Chenevert
Baton Rouge, Louisiana

Counsel for Plaintiffs-Appellants
Ashley Nichole Major Bares and
James Wesley Major

John P. Wolff, III
Brian T. Butler
Tori S. Bowling
Sydnee D. Menou
Baton Rouge, Louisiana

Counsel for Defendant-Appellee
Cashiola, Inc. and/or Cash's Casino,
Inc. d/b/a Cash's Truck Plaza

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: **REVERSED AND REMANDED.**

**CHUTZ, J.**

Plaintiffs-appellants, Ashley Nichole Major Bares and James Wesley Major, appeal the trial court's judgment, granting summary judgment and dismissing their claims for damages for the wrongful death and survival actions of James D. Major (decedent) against defendant-appellee, Cashiola, Inc. and/or Cash's Casino Inc. d/b/a Cash's Truck Plaza (Cash's), finding Cash's falls within the ambit of immunity provided for the recreational use of its property. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2019, while operating a three-wheeler on Plaza West/Future Street in Port Allen, Louisiana, decedent encountered a load of sand left in the roadway and flipped. Decedent was thrown off the vehicle, sustained blunt force trauma to his head, and died. His major children, Ashley and James (collectively, the Majors), filed this lawsuit on September 5, 2019. They named as defendants Beezy Trucking, LLC (Beezy Trucking), its employee Roy M. Jones, and its insurer, Progressive Gulf Insurance Company (Progressive), based on allegations that Jones, while in the course and scope of his employment with Beezy Trucking, had dumped the sand onto the roadway. The Majors additionally asserted allegations of liability against Cash's, averring that its negligence was a cause of decedent's death. Also named as a defendant was COSOGI, LLC (COSOGI), who the Majors averred had an ownership interest in the roadway upon which the decedent died.[1]

---

[1] The record shows that after the Majors filed their petition, the matter was removed to federal court based on allegations of diversity jurisdiction. After the federal court granted leave allowing the Majors to file a supplemental and amending petition apparently adding COSOGI as a party, the matter was remanded back to the 18th Judicial District Court (JDC) for the Parish of West Baton Rouge. Although this appeal record does not contain a copy of the amended pleading filed in the 18th JDC, the parties do not dispute that COSOGI was duly named as a defendant in this litigation.

On June 9, 2020, COSOGI filed a motion for summary judgment, claiming that it was entitled to recreational use immunity. The trial court granted the motion and dismissed COSOGI from the litigation in a judgment signed on December 2, 2020. That judgment was not appealed and is final. The Majors subsequently settled and compromised their claims against Beezy Trucking, Jones, and Progressive, and on April 28, 2021, the trial court signed a judgment dismissing these defendants from the lawsuit. Thus, only the Majors' claims against Cash's remain.

Cash's filed a motion for summary judgment on April 21, 2021, asserting that like COSOGI, it is immune from liability for the Majors' claims because of the recreational use of the property at the time of the accident. After a hearing on August 25, 2021, the trial court granted the motion and dismissed the Majors' claims against Cash's. The trial court signed a judgment on September 16, 2021 that the Majors have appealed.

## DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that governs the trial court's determination of whether summary judgment is appropriate. *In re Succession of Beard*, 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-60.

3

The initial burden of proof is on the party filing the motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover may meet this burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966(A)(4). The mover's supporting documentary evidence must prove the essential facts necessary to carry its burden. Thus, in deciding a motion for summary judgment, the court must first determine whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. *Crockerham v. Louisiana Med. Mut. Ins. Co.*, 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So.3d 604, 608.

It is only once the motion for summary judgment has been properly supported by the moving party, and the mover has made a prima facie showing that the motion for summary judgment should be granted, the burden shifts to the non-moving parties to produce factual support, through the use of proper documentary evidence attached to their opposition, sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial, that is, the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Trichell v. McClure*, 2021-1240 (La. App. 1st Cir. 4/8/22), --- So.3d ----, ----, 2022 WL 1053500, at *2. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. *Bryant v. Premium Food Concepts, Inc.*, 2016-0770 (La. App. 1st Cir. 4/26/17), 220 So.3d 79, 82, writ denied, 2017-0873 (La. 9/29/17), 227 So.3d 288.

The only issue raised in Cash's motion for summary judgment was whether the Majors' claims against Cash's are correctly dismissed because the property was

used for a recreational purpose at the time of the accident, thereby immunizing Cash's from liability. The Majors contend that even in light of Cash's showing, outstanding issues of material fact remain as to whether the decedent was using the three-wheeler for recreational purposes precluding summary judgment.

In Louisiana, limitation of liability is statutorily afforded to owners and operators of property used for recreational purposes. Because the Recreational Use Statutes are in derogation of common or natural rights, they are strictly interpreted and must not be extended beyond their obvious meaning. *Fournerat v. Farm Bureau Ins. Co.*, 2011-1344 (La. App. 1st Cir. 9/21/12), 104 So.3d 76, 81, writ denied, 2012-2148 (La. 11/21/12), 102 So.3d 59 (citing *Monteville v. Terrebonne Parish Consol. Gov't*, 567 So.2d 1097, 1100 (La. 1990)).[2]

La. R.S. 9:2795 provides in relevant part:

(A) As used in this Section:

(1) "Land" means urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty.

(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, **motorized, or nonmotorized vehicle operation for recreation purposes**, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites. ...

(B) (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

---

[2] Although the immunity afforded to those whose property is used for recreational purposes is set forth in the provisions of both La. R.S. 9:2791 and 2795, it is undisputed in this appeal that only the provisions of the latter statute are before us.

(a)    Extend any assurance that the premises are safe for any purposes.

(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made. [Emphasis added.]

Cash's bore the burden of proof both as the moving party seeking summary judgment and as the party asserting the affirmative defense of immunity. See *Bailey v. Dep't of Culture, Recreation & Tourism*, 2021-0227 (La. App. 1st Cir. 11/4/21), 332 So.3d 679, 685. To succeed, Cash's was required to establish that at the time of the accident, the decedent was using Cash's property for recreational purposes. See *Fournerat*, 104 So.3d at 82.

In support of its motion, in addition to pleadings elsewhere contained in the record, Cash's attached a copy of the transcript of the hearing of COSOGI's motion for summary judgment and the deposition testimonies of Ruth Bilbe, COSOGI's corporate representative; Anthony "Tony" James Cashiola, Cash's corporate representative; and Jones.

Bilbe explained that her great grandfather had purchased a large amount of property in West Baton Rouge Parish. In the 1990s, a portion was sold to Cash's. Through inheritance, Bilbe acquired ownership of the approximately 120-acre tract of land adjacent to Cash's from her mother. COSOGI was formed as the owner of the tract of land from three entities created by the parents of the present-day owners. Although Bilbe periodically drove over the roadway where the accident had occurred, she did not know who built the road or the purpose for which it had been constructed. She denied anyone at Cash's had sought COSOGI's permission to use the roadway to allow the general public to get to Cash's business establishment but admitted that if a right of passage had been given to Cash's in

6

1998, it was her mother who had managed the property and Bilbe knew nothing about the property management at that time. She also stated that who owned the roadway was always "a gray area" and that COSOGI was never sure until the accident occurred.

Cashiola explained that he was a co-owner of the Cash's facility, which consists of a truck stop (that apparently contains a store and a restaurant), a parking lot, and a casino. According to Cashiola, he had purchased approximately seven acres upon which Cash's is situated in three transactions from COSOGI's predecessor-in-interest. The last purchase included a servitude allowing Cash's to access the back parking lot of the Cash's establishment. Cashiola stated that he poured the concrete for the roadway on the property he owned as well as for the roadway upon which his servitude was located. He explained that using his private roadway when connected to the servitude roadway on the property owned by COSOGI allowed 18-wheelers to use Court Street to safely return to the interstate behind the establishment since exiting Cash's in the front required the driver to maneuver a left turn across four lanes of traffic.

Through this showing, Cash's established that while COSOGI owned the land upon which the roadway was where the decedent had the accident, Cash's had a servitude of passage which it was exercising. Thus, the collective testimonies of these deponents established, and the parties do not dispute, that Cash's was an owner as contemplated by La. R.S. 9:2795(A)(2).

But Cash's failed to offer any evidence that the decedent's use of the roadway at the time of the accident was for recreational purposes. Although Cashiola speculated that when decedent encountered the pile of sand, which Cashiola estimated was between 15 and 17 inches high, decedent "wanted to jump" it, the record contains no other evidence that the roadway was used for this or any

recreational purpose.[3] Specifically, the record is devoid of evidence of any driver – including the decedent -- having used the roadway for recreational activity.

The overwhelming evidence offered by both Cash's and the Majors allows for an inference by the trier of fact that the decedent was accessing Cash's truck stop and/or casino to engage in commercial activity. Cashiola stated that the purpose in constructing the roadway, which consisted of the servitude portion over COSOGI's land and the portion over Cash's land, was to allow vehicular traffic to access the Cash's truck stop, parking lot, and casino. While Cashiola intended that only 18-wheelers would use the roadway, he was aware that private vehicles used the roadway and he did not post any signage advising the driving public not to trespass or restricting use of the roadway. Cashiola also acknowledged that "everybody assumed ... they had permission to use [the roadway upon which the accident occurred] to get to Cash's."

Bilbe agreed that after the accident, she became aware of the general motoring public's use of the roadway "to get to Cash's." The only other use of the roadway Bilbe mentioned was when she periodically visited COSOGI's 120-acre tract. Like Cashiola, she offered no testimony suggesting any use of the roadway by vehicles for recreational activities.

In their opposition to Cash's motion for summary judgment, the Majors offered their respective affidavits in which each attested that the decedent was retired and disabled and did not have a driver's license or own any car, truck, or other motorized vehicle. The only recreational use the decedent made of the three-wheeler was to hunt. But on the day of the accident, he was not hunting. He had driven from his residence along a trail that ran parallel to Court Street to go to

---

[3] During Jones's deposition, the attorneys suggested a video recording of the accident existed but it was not introduced into evidence.

Cash's to purchase gas for the three-wheeler and to either play the video poker machines or purchase snacks.

Based on the deposition testimonies and affidavits, the record establishes only that the decedent was using the roadway to access Cash's for a commercial purpose. Thus, on the showing made in conjunction with the motion for summary judgment, Cash's failed its initial burden of demonstrating the recreational use of the roadway upon which the accident occurred so as to support its summary judgment dismissal of the Majors' claims based on immunity.

In its motion for summary judgment, and now on appeal in supporting the trial court's judgment, Cash's suggests that despite its inability to show that the decedent was using the roadway for recreational purposes, this court's opinion in *Fournerat*, 104 So.3d at 82-83, necessitates a finding that Cash's enjoys immunity from liability. Cash's reasons that since in both this case and *Fournerat*, each decedent died as a result of injuries he sustained while driving a three-wheeler, we are compelled to find the Majors' decedent was using the motorized vehicle for a recreational purpose.

In *Fournerat*, this court similarly had before it a review of the propriety of the grant of immunity for recreational use to a landowner and a farming tenant in a wrongful death action brought by the mother of a 45-year-old man, who had been operating a three-wheeler on property in Plaquemine, Louisiana, when he encountered a concealed and unprotected excavation that had been dug to accommodate a drain pipe, which led underground to a drainage ditch or canal. As a result of the injuries that he sustained in the accident, plaintiff's son died. *Fournerat*, 104 So.3d at 77.

In response to the lawsuit, defendants claimed they were immune from liability under the recreational use statutes. Based on a review of the record before

it, this court concluded that the purpose of the property where the subject drain was located was for a commercial activity to facilitate defendant's sugarcane farming operations. The record was "replete with evidence" showing that prior to this incident, the landowner and the farming tenant knew that the general public and neighbors recreationally traveled on the headland road upon which the decedent drove the three-wheeler and permitted the recreational use of the property as long as it did not interfere with the sugarcane farming operations. *Fournerat*, 104 So.3d at 82. Although plaintiff pointed out there was no evidence in the record about the use her son was making of the property at the time of the accident, the court concluded because there was no evidence that he was using it for anything other than a recreational purpose, the landowner and sugarcane farming tenant enjoyed immunity under La. R.S. 9:2795. *Fournerat*, 104 So.3d at 80-82.

In the matter presently before us, the undisputed evidence established that the roadway upon which the decedent was traveling at the time of the accident was built for the purpose of allowing access to a commercial establishment. The record contains absolutely no evidence that the roadway was ever used by any motorized vehicles, including three-wheelers, for recreational purposes. Moreover, the Majors offered evidence to support findings the decedent was enroute to Cash's to patronize the business establishment when the accident occurred. By contrast, the sugarcane farm headland road upon which Fournerat was traveling when he encountered the hazard that resulted in his death was used for agricultural purposes. The record contained no evidence to support for the *Fournerat* decedent's presence on the headland road for anything other than a recreational purpose. Therefore, we find the facts before us presently are sufficiently distinguishable from those before the *Fournerat* court and decline to interpret *Fournerat*, 104 So.3d at 82-83, as broadly holding that *every* use of a three-

10

wheeler is recreational. Because *Fournerat*, 104 So.3d at 82-83 is inapposite, Cash's reliance on it is misplaced.

Cash's further suggests that since the trial court determined that COSOGI was entitled to a summary judgment dismissal based on its reasoning that *Fournerat* mandated a finding that the decedent's three-wheeler use was for recreational purposes, the law-of-the-case doctrine dictates the same result in the subsequent application of La. R.S. 9:2795 to Cash's motion for summary judgment. As such, Cash's claims that its dismissal from this litigation is required on this basis.

As we have explained, in light of the evidentiary showing, *Fournerat* does not mandate a finding that the decedent's use was for recreational purposes. Additionally, the law-of-the-case doctrine, which refers to a policy by which the court will not, on a subsequent appeal, reconsider prior rulings in the same case, applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court. *Day v. Campbell-Grosjean Roofing & Sheet Metal Corp.*, 260 La. 325, 256 So. 2d 105, 107 (1971). Its application is proper only (1) in a trial or appellate court where a higher court has decided the issue, but has remanded the case to the lower court for further proceedings, or (2) when the same issue is presented to the same intermediate appellate court that has previously decided that issue in the same case, but the decision has not acquired the authority of the thing adjudged. Even when applicable, the law-of-the-case doctrine is discretionary and should not be applied in cases of palpable error or where application would result in injustice. Frank Maraist, *Civil Procedure* in 1 *Louisiana Civil Law Treatise*, § 6:7 (2d ed. 2021). Clearly, the discretionary doctrine of the law-of the-case is inappropriate in this case where the propriety of the summary judgment dismissal of COSOGI has

11

never been reviewed by a higher court. Cash's assertion that we are bound to apply the doctrine is without merit.

Therefore, we have concluded that in its evidentiary showing in support of its motion for summary judgment Cash's failed to establish that the decedent was traveling on the roadway for recreational purposes at the time of the accident so as to support its claim of immunity from liability under La. R.S. 9:2795. We also have determined that the facts of *Fournerat* are distinguishable from those presently before us such that its holding is inapplicable, and an application of the law-of the-case doctrine is not warranted under the facts before us. Accordingly, the trial court erred in granting the motion for summary judgment and dismissing Cash's from this litigation on the basis of recreational use immunity.

## DECREE

For these reasons, we reverse the trial court's judgment and remand for further proceedings. Appeal costs are assessed against defendant-appellee, Cashiola, Inc. and/or Cash's Casino Inc. d/b/a Cash's Truck Plaza.

**REVERSED AND REMANDED.**