Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,699-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| DONALD WHITE AND JOANN WHITE, INDIVIDUALLY, AND ON BEHALF OF THEIR MINOR CHILD, J.W. | Plaintiffs-Appellants |

versus

| | |
|---|---|
| THE LOUISIANA UNITED METHODIST CHILDREN AND FAMILY SERVICES, INC., D/B/A THE LOUISIANA METHODIST CHILDREN'S HOME, AND XYZ INSURANCE COMPANY | Defendants-Appellees |

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 61,864

Honorable Monique Babin Clement, Judge

* * * * *

| | |
|---|---|
| MINIFIELD & HARPER<br>By: Pamela R. Harper | Counsel for Appellants |
| HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS, LLP<br>By: John B. Saye | Counsel for Appellees |

* * * * *

Before COX, STEPHENS, and MARCOTTE, JJ.

**STEPHENS, J.**,

This civil appeal arises from the Third Judicial District Court, Parish of Lincoln, the Honorable Monique B. Clement, Judge, presiding. The plaintiffs, Donald and Joann White, individually and on behalf of their minor child, J.W., filed a petition alleging that the defendant, the Louisiana United Methodist Children and Family Services, Inc., d/b/a The Louisiana Methodist Children's Home ("LMCH"), was negligent in its failure to properly care for their son. The LMCH filed a motion for summary judgment alleging there were no disputed issues of material fact. The trial court granted the summary judgment motion and dismissed the plaintiffs' claims with prejudice. For the reasons set forth below, we affirm the part of the trial court's judgment denying the declinatory exceptions filed by Je'Mari White, who was substituted as the proper party plaintiff once he reached the age of majority, reverse the part of the trial court's judgment granting the motion for summary judgment filed by the defendant, and remand the matter to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Mr. and Mrs. White are the legal parents and biological grandparents of Je'Mari White, who was born in February 2006. As a child, Je'Mari was diagnosed with autism spectrum disorder with accompanying intellectual disability without language impairment, Attention-Deficit Hyperactivity Disorder ("ADHD"), Bipolar Disorder Affective Disorder, current episode hypomanic, and Post-Traumatic Stress Disorder ("PTSD"). Mrs. White stated in her deposition that, prior to his being placed at the LMCH, Je'Mari had been a patient in numerous psychiatric hospitals and programs to assist

with his mental health needs. She also listed several instances with the previous programs that resulted in her and Mr. White removing him from those facilities' care.

After researching the LMCH and its services, Mrs. White and Mr. White decided to admit Je'Mari to the LMCH on July 22, 2020, for residential treatment and therapeutic inpatient and outpatient services to address his mental health needs, including treatment for aggression, inappropriate sexual behaviors, oppositional defiance, anger management challenges, and mood stabilization. However, the Whites ultimately removed Je'Mari from the LMCH on December 18, 2020. In their petition, filed on August 26, 2021, the Whites alleged various actions and/or inactions by the staff at the LMCH that caused damage to Je'Mari and them. Most notably, the Whites alleged that a staff member was the cause of Je'Mari's fractured wrist and that medical treatment for the broken wrist was delayed. The Whites also asserted that the staff excessively and/or abusively punished Je'Mari while he was a resident at the LMCH as well as taunted Je'Mari about being spoiled. The LMCH denied these allegations in its answer filed on October 20, 2021.

On August 19, 2024, the LMCH filed a motion for summary judgment alleging that there were no genuine issues of material fact. In its memorandum in support of the motion for summary judgment, the LMCH offered Je'Mari's "Initial Plan of Care" and established that Je'Mari was followed by a psychiatrist, treated by licensed social workers, and participated in individual, group, and family counseling. Although the Whites claim that Je'Mari's wrist was fractured because of the LMCH's negligence, the notes indicate that he fractured his wrist after he was put in

2

the calming room for being dangerous to himself and others.  The notes further show that after being placed in the room, Je'Mari attempted to force the door open and pushed the door against a staff member who was on the other side of the door.  This caused Je'Mari and the staff member to fall backwards.  The staff member allegedly fell on top of Je'Mari, which caused his wrist to facture.  The LMCH maintained that Je'Mari was not in a "hold" nor was he being restrained at the time of the incident.  Once Je'Mari complained of wrist pain, the LMCH staff assessed him and took him for X-rays of his wrist, and the LMCH notified Mr. and Mrs. White of the incident immediately.

The trial court set a hearing on the LMCH's motion for summary judgment for November 4, 2024.  However, on October 16, 2024, the Whites filed a motion for continuance.[1]  The Whites then filed an opposition to the LMCH's motion for summary judgment on October 22, 2024.  In their opposition, the Whites included statements from Je'Mari's affidavit in which he claimed that he was standing in the hallway with the LMCH staff members when they restrained him and dragged him to the time-out room.  One staff member then pushed the other staff member onto Je'Mari, which resulted in the staff member falling on Je'Mari and fracturing his wrist.  The next day, according to Je'Mari, he was on room restrictions when a staff member told him to do push-ups and sit-ups with his broken wrist.

On October 22, 2024, the Whites and Je'Mari filed a motion to substitute a real party in interest, claiming that Je'Mari had turned 18 years old in February 2024, and he was no longer a minor requiring representation

---

[1] The trial court set a hearing for the motion for continuance on October 25, 2024, at 11:30 a.m.  The trial court ultimately denied the motion for continuance.

by his parents/grandparents. Je'Mari asked to be substituted as a real party of interest in this matter due to his having reached the age of majority. The trial court granted the motion to substitute a party in interest on October 25, 2024.

On November 4, 2024, Je'Mari filed declinatory exceptions of insufficiency of citation and insufficiency of service of process. In his exceptions, Je'Mari alleged that the Whites did not have the procedural capacity to represent him at the time citation or service of process of the motion for summary judgment was served on them through their attorney because he had reached the age of majority. Je'Mari maintained that he had never been served with the motion for summary judgment.

The trial court held a hearing on LMCH's motion for summary judgment and Je'Mari's exceptions of insufficiency of citation and insufficiency of service of process on December 5, 2024. The trial court denied Je'Mari's exception of insufficiency of citation because it found no statute or case law to support the requirement that citation be attached to every motion filed. As it related to the exception of insufficiency of service of process, the trial court reasoned that because counsel never filed a motion to withdraw on behalf of Je'Mari and because he never filed a motion to join the lawsuit in proper person and/or never hired new counsel, service on counsel of record with the summary judgment was proper. Therefore, the trial court denied Je'Mari's exception of insufficiency of service of process. Following arguments on the exceptions and the motion for summary judgment, the trial court took a recess and returned the following morning on December 6, 2024.

4

The trial court issued its oral reasons for judgment, finding that Je'Mari was placed in a calming room for being dangerous to himself and others according to the notes and medical reports. Je'Mari then forced the door open, which resulted in him and a staff member falling backwards and Je'Mari fracturing his wrist. The trial court observed that the Whites were notified of the incident immediately, and stated that a progress note from August 28, 2020, noted that Je'Mari related that he had broken his wrist while escalated in time-out. The wrist incident occurred at 10:57 a.m., and the nursing department was notified at 11:00 a.m. of Je'Mari's wrist according to the notes and medical records. The trial court determined that no evidence supported Je'Mari's claim that he was punished excessively. Instead, the court found the record to be "repetitive" with instances where Je'Mari acted out with aggression and steps were taken to help de-escalate his aggression to protect him and other residents.

Relating to Je'Mari's affidavit, the trial court concluded that it was devoid of specific underlying facts. The court observed that much of the affidavit simply restated the language contained in the petition for which no corroborating evidence had been offered by the Whites. For those reasons as well as others explained in its oral reasons for judgment, the trial court ultimately granted the LMCH's motion for summary judgment and dismissed the plaintiffs' claims with prejudice. A judgment reflecting this ruling was signed and filed on December 20, 2024.

**DISCUSSION**

On appeal, the plaintiffs assert two assignments of error. The plaintiffs first argue that the trial court erred in denying Je'Mari's declinatory exceptions of insufficiency of citation and insufficiency of

5

service of process of the motion for summary judgment. In support, the plaintiffs urge that, while Je'Mari was a minor at the time the litigation commenced, he reached the age of majority in February 2024, and the Whites' rights to assert any claim on behalf of him ceased once he reached the age of majority. Therefore, the LMCH should have requested service of the motion for summary judgment on Je'Mari. In response, the LMCH contends that counsel of record was served with the motion for summary judgment and complied with the requirements of La. C.C.P. art. 1313. Furthermore, the LMCH maintains that whether the person represented is a minor or a major is not a defining factor considered for service.

Finally, the plaintiffs urge that the trial court erred in granting the LMCH's motion for summary judgment. The plaintiffs assert that the trial court cannot weigh the evidence of material fact as to the credibility of witnesses on summary judgment. Therefore, they ask this Court to reverse and remand this matter to the trial court. In response, the LMCH argues that the trial court properly granted its motion for summary judgment because the plaintiffs failed to show any genuine issue of material fact. The LMCH contends that the plaintiffs could not establish essential elements of their case, like whether Je'Mari's wrist injury was caused by improper action or if the injury was improperly treated by the staff. Furthermore, the LMCH urges that Je'Mari's affidavit was self-serving and merely restated the facts alleged in the petition.

We first review the issues regarding the trial court's ruling on the motion for summary judgment. Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether the summary judgment is appropriate.

6

*Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791;

*Dupree v. Bossier Par. Sch. Bd.*, 56,091 (La. App. 2 Cir. 2/26/25), 408 So.

3d 468, *writ denied*, 25-00368 (La. 6/3/25), 410 So. 3d 787; *Bank of Am.,*

*N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219.  Summary

judgment is favored by law and provides a vehicle by which the just, speedy,

and inexpensive determination of an action may be achieved.  La. C.C.P. art.

966(A)(2).  We view the record and all reasonable inferences to be drawn

from it in the light most favorable to the nonmoving party.  *Hines v. Garrett*,

04-0806 (La. 6/25/04), 876 So. 2d 764; *Dupree*, *supra*.  A motion

for summary judgment shall be granted if the motion, memorandum, and

supporting documents show there is no genuine issue as to material fact and

the mover is entitled to judgment as a matter of law.  La. C.C.P. art.

966(A)(3).  Louisiana C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover.  Nevertheless, if the
> mover will not bear the burden of proof at trial on the issue that
> is before the court on the motion for summary judgment, the
> mover's burden on the motion does not require him to negate
> all essential elements of the adverse party's claim, action, or
> defense, but rather to point out to the court the absence of
> factual support for one or more elements essential to the
> adverse party's claim, action, or defense.  The burden is on the
> adverse party to produce factual support sufficient to establish
> the existence of a genuine issue of material fact or that the
> mover is not entitled to judgment as a matter of law.

A genuine issue is one about which reasonable persons could

disagree.  *Hines*, *supra*; *Dupree*, *supra*; *Franklin v. Dick*, 51,479 (La. App. 2

Cir. 6/21/17), 224 So. 3d 1130.  In determining whether a fact is genuine for

purposes of summary judgment, courts cannot consider or weigh the merits,

make credibility determinations, or evaluate testimony.  *Suire v. Lafayette*

*City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37; *Sepulvado*

7

*on Behalf of Sepulvado v. G-Rock Climbing, LLC*, 55,637 (La. App. 2 Cir. 5/22/24), 387 So. 3d 870, *writ denied*, 24-00800 (La. 10/15/24), 394 So. 3d 818. A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So. 2d 131; *Sepulvado on Behalf of Sepulvado*, *supra*.

To determine liability in a negligence claim, we apply the duty-risk analysis, which requires the plaintiffs to prove that the defendant's conduct was a cause-in-fact of the resulting harm, that defendant owed a duty of care to the plaintiffs, that duty was breached, and that the risk of harm was within the scope of protection afforded by the duty breached. *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So. 2d 318; *Baham v. Compass Health Brand Corp.*, 54,693 (La. App. 2 Cir. 8/10/22), 345 So. 3d 1157; *Carney v. Eldorado Resort Casino Shreveport*, 48,761 (La. App. 2 Cir. 1/29/14), 132 So. 3d 546. A critical inquiry is whether a causal relationship exists between the plaintiff's harm and the alleged negligent conduct of the defendant. Cause-in-fact is generally a "but for" inquiry, which requires plaintiff to show he would not have sustained the injury but for defendant's conduct. *Baham*, *supra*; *Carney*, *supra*. In a negligence action, each inquiry must be affirmatively answered in order for plaintiff to recover. *Id*.

In support of its motion for summary judgment, the LMCH argues that the plaintiffs have produced no admissible evidence that Je'Mari's wrist fracture resulted from the negligent and/or intentional acts by LMCH staff members or that LMCH staff members punished Je'Mari excessively and/or abusively. The LMCH also attached affidavits from three current or former staff members to its motion for summary judgment: Andrew Morse, MA, LPC-S, the Senior Director of Care at the LMCH; Ryan Senn, a former staff member at the LMCH; and Julian Kary, a staff member at the LMCH.

As it relates to the incident involving Je'Mari's fractured wrist, an "Emergency Safety Intervention Report" was attached to Senn's and Kary's affidavits detailing the events leading up to Je'Mari's wrist fracture. In these notes, the affiants documented that no restraint or hold was ever used on Je'Mari in the course of escalation. Instead, he was given time, space, and redirection, but those methods failed in calming Je'Mari, so he was placed in the calming room. Je'Mari then attempted to escape the calming room by pushing on the door, which led to Je'Mari and a staff member colliding and falling to the floor, resulting in Je'Mari's wrist fracture. However, according to Je'Mari's affidavit, Kary and Senn restrained him and dragged him to the time-out room. Je'Mari stated in his affidavit that Senn pushed Kary into Je'Mari, which resulted in him and Kary falling to the ground with Kary landing on top of Je'Mari. Consequently, Je'Mari's wrist was fractured, and surgery and rehabilitation were required.

Also included in Je'Mari's affidavit were his claims pertaining to the excessive punishment and abuse he suffered while a resident at the LMCH. Je'Mari alleged that he received bad treatment from both the staff and other residents at the home which caused him to act out. He claimed to have been

9

a victim of physical and mental harm caused by the staff members and other patients at the home. Je'Mari stated that a staff member instructed him to do 250 push-ups and sit-ups with a fractured wrist while on room restrictions, and he also received constant taunting from the staff. Despite his fear of room seclusion, Je'Mari claimed that staff members constantly placed him under room seclusion, and, in one instance, he walked outside but the door locked behind him. Staff failed to let him back in the building until 20 minutes later. Not only was he bullied by other patients, according to Je'Mari, other patients were allowed to take his personal belongings and would initiate fights with him. These instances caused Je'Mari to get upset.

In response, the LMCH submitted numerous patient documents and notes taken during Je'Mari's stay at the LMCH. These documents indicated that any seclusion Je'Mari faced was a result of his actions and was the approved method for de-escalation of the situations Je'Mari was causing. One instance of seclusion resulted from Je'Mari's inappropriate sexual behavior and conduct.[2] The LMCH also claims that Je'Mari was not punished or secluded every time he exhibited misconduct. Instead, Je'Mari's seclusion typically resulted from him becoming physical with staff members or other patients. Furthermore, the LMCH maintains that Je'Mari had every opportunity to report any misconduct or mistreatment he received from staff members and other residents. When Je'Mari did report that a staff member physically hurt him, the LMCH investigated the allegation thoroughly and took his complaint seriously. While Je'Mari also alleged that staff members allowed other patients to steal his belongings, the LMCH

---

[2] Other instances of seclusion resulted from Je'Mari destroying property, causing a disturbance to trigger his peers, using excessive profanity, and exposing himself.

countered that Je'Mari also stole other patients' belongings while he was a resident at the LMCH.

In considering the evidence submitted related to the motion for summary judgment as well as the record as a whole, we disagree with the trial court's assessment that there are no genuine issues of material fact. The evidence clearly shows conflicting stories as it relates to the cause of Je'Mari's fractured wrist. The acceptance of the LMCH's version of events as opposed to Je'Mari's version of events would result in this Court considering the merits, weighing the merits, making credibility determinations, and evaluating the testimony given, which are inappropriate actions when ruling on a motion for summary judgment. Likewise, the evidence shows that Je'Mari was placed in seclusion or in the calming room on numerous occasions, but there are conflicting stories as to what led to and caused him to be placed in seclusion. Again, accepting one version of events as opposed to the other would be an improper determination for summary judgment purposes, especially considering the affidavits submitted by both parties. Although the trial court clearly articulated its reasons for granting the LMCH's summary judgment, we cannot say that the record before us shows no genuine issues of material fact. As a result, we reverse that part of the judgment of the trial court granting the LMCH's motion for summary judgment and remand this matter for further proceedings.

In their other assignment of error, the plaintiffs contend service of the motion for summary judgment was improper as it relates to Je'Mari's status at the time the motion for summary judgment was filed. La. C.C.P. art. 1313 provides, in pertinent part:

(A) Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:
  (1) Mailing a copy thereof to the counsel of record, …
  (2) Delivering a copy thereof to the counsel of record, …
  (3) Delivering a copy thereof to the clerk of court, if there is no counsel of record and the address of the adverse party is not known.
  (4) Transmitting a copy by electronic means to counsel of record, …

Similarly, La. C.C.P. art. 1314(A)(2)(a) provides that the sheriff shall serve by personal service on the counsel of record of the adverse party a pleading which is required to be served but which may not be served under Article 1313. At the time service was made, Pamela Harper was the counsel of record for the plaintiffs. She never withdrew her representation of Mr. and Mrs. White on behalf of J.W., and Je'Mari's minor/major status had no effect on Ms. Harper's continuous status as the counsel of record.[3] For this reason, we find that the trial court properly denied Je'Mari's exceptions of insufficiency of citation and insufficiency of service of process.

## CONCLUSION

For the reasons expressed herein, the part of the trial court's judgment denying the declinatory exceptions of insufficiency of citation and insufficiency of service of process filed by the plaintiff, Je'Mari White, is affirmed. However, we reverse that part of the trial court's judgment granting the motion for summary judgment filed by the defendant, the Louisiana United Methodist Children and Family Services, Inc., d/b/a the Louisiana Methodist Children's Home, and we remand this matter for

---

[3] We note that Je'Mari is now a proper party to this lawsuit and has retained Ms. Harper as his counsel.

12

further proceedings consistent with this opinion.  Costs of this appeal are assessed evenly between the parties.

**AFFIRMED IN PART**; **REVERSED IN PART**; **REMANDED**.